BUCKEYE POWDER CO. v. E. I. DU PONT DE NEMOURS POWDER CO,
et al.

(Circuit Court of Appeals, Third Circuit. July 2, 1915.)

No. 1899.

1. MONOPOLIES ⊜⟿28—ANTI-TRUST ACT—ACTIONS FOR DAMAGES—PROOF.

A plaintiff, to sustain an action under Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (Comp. St. 1913, § 8829), for damages for violations of sections 1 and 2 of the act, brought prior to Act Oct. 15, 1914, c. 323, § 5, 38 Stat. 731, declaring that a final judgment hereafter rendered in any suit brought by the United States under the anti-trust laws, to the effect that a defendant has violated the laws, shall be prima facie evidence against the defendant in any suit brought by any other person against the defendant under the laws, must prove that defendants have violated the Anti-Trust Act, and that by such violation they have so injured plaintiff that damages should be awarded, and the fact that defendants, in a suit by the United States, had been adjudged guilty of violating the act, was not available to plaintiff.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⊜⟿28.]

2. APPEAL AND ERROR ⊜⟿1003—QUESTIONS REVIEWABLE—VERDICT—CONCLUSIVENESS.

The United States Circuit Court of Appeals may not determine whether a verdict is in accord with the weight of the evidence, or review the verdict on any disputed fact, but may only inquire whether assignments of error, properly taken, disclose any material mistake in the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ⊜⟿1003.]

3. APPEAL AND ERROR ⊜⟿839—QUESTIONS REVIEWABLE—DEFENSES.

Where the verdict for defendant relying on two defenses might have been given under either, plaintiff, on writ of error to review the judgment thereon, was entitled to raise legal rulings relevant to either defense.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2915, 3278–3280, 3286–3288, 3290–3293, 3297–3300, 3377; Dec. Dig. ⊜⟿839.]

4. MONOPOLIES ⊜⟿28—ANTI-TRUST ACT—ACTION FOR DAMAGES—EVIDENCE.

The mere fact that the majority of the stock of corporations engaged in the manufacture and sale of powder, other than black blasting powder, was owned or controlled by a corporation engaged in manufacturing black blasting powder, did not alone show that the former corporations participated in a conspiracy by the latter to injure the trade and business of another manufacturing black blasting powder, suing all the corporations for damages under Anti-Trust Act, § 7.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ⊜⟿28.]

5. APPEAL AND ERROR ⊜⟿679—QUESTIONS REVIEWABLE—RULINGS ON PLEADINGS.

The action of the trial court in requiring plaintiff, suing for damages under Anti-Trust Act, § 7, for violations of sections 1 and 2 of the Act, to elect on which violation it will rely, is not reviewable, where all the evidence is not in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2878–2879; Dec. Dig. ⊜⟿679.]

6. PLEADING ⊜⟿369—ELECTING CAUSE OF ACTION—SUIT UNDER ANTI-TRUST ACT.

Where the declaration, in an action for damages under Anti-Trust Act, § 7, sought a recovery for violations of sections 1 and 2 of the act, the

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court was justified in requiring plaintiff to elect on which section it would rely.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1199–1209; Dec Dig. ☞369.]

7. APPEAL AND ERROR ☞1039—RULINGS ON PLEADINGS—HARMLESS ERROR.

Where, in an action for damages under Anti-Trust Act, § 7, plaintiff's case depended on the truth of the charge to which practically all the evidence was directed, that defendants had unlawfully attempted to monopolize a large part of the trade in an article of commerce, and the case was tried on the merits, the ruling requiring plaintiff to elect whether he would rely on a violation of section 1 or of section 2 was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. ☞1039.]

8. JUDGMENT ☞644—ANTI-TRUST ACT—ACTIONS FOR DAMAGES—EVIDENCE—ADMISSIBILITY.

Where an action under Anti-Trust Act, § 7, for damages for violations of sections 1 and 2 of the Act, was brought prior to Act Oct. 15, 1914, making a final judgment in any suit by the United States under the trust law, to the effect that defendant has violated the law, prima facie evidence against defendant in any suit by any other person, a decree adjudging defendants guilty of violations of the Anti-Trust Act, rendered in a suit by the United States, was inadmissible, because the parties in the two suits and the subject-matter thereof were different.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1157; Dec. Dig. ☞644.]

9. APPEAL AND ERROR ☞274—QUESTIONS REVIEWABLE—INSTRUCTIONS—EXCEPTIONS.

Where the court, in response to a party's requested instructions, stated that it had touched on every one of the requests, and did not charge them in the language requested, but counsel might take an exception that it did not specifically charge in the precise language requested, and the party only excepted to that portion of the charge which refused to give the requested instructions, except as charged, did not call the trial court's attention to what was objected to, and was insufficient to call for a review of the ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1591, 1592, 1605–1607, 1624, 1631–1645; Dec. Dig. ☞274.]

10. TRIAL ☞261—INSTRUCTIONS—REQUESTS.

It is not error to refuse a series of requested instructions, where one of the instructions is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. ☞261.]

11. MONOPOLIES ☞28—ACTIONS FOR DAMAGES UNDER ANTI-TRUST ACT—INSTRUCTIONS.

In an action for damages under Anti-Trust Act, § 7, for violations of sections 1 and 2 of the Act, instructions which state that a defendant at the time of the organization of plaintiff company, and during the time plaintiff carried on its business, was acting in violation of the Anti-Trust Act as attempting to monopolize trade, but that the status of defendant did not make it liable to plaintiff, and plaintiff, to recover, must show that defendant used its power in the trade oppressively, at least generally, and thereby obstructed the free flow of commerce, and that, if plaintiff was sufficiently capitalized to carry on a struggle under normal conditions, it was immaterial whether it was or was not sufficiently capitalized to meet a competition forced on it by unlawful means, were not objectionable as equivalent to charging that, after a monopoly had obtained a foothold, competitors entered the field at their peril.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. ☞28.]

12. APPEAL AND ERROR ☞978—NEW TRIAL ☞44—MISCONDUCT OF JURY—
FINDINGS—DISCRETION OF COURT.

Refusal of new trial on the ground of misconduct of the jury, because having in their possession, during their deliberation, papers not in evidence, is discretionary, and will not be disturbed, except for abuse of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. ☞978; New Trial, Cent. Dig. §§ 80–85, 105; Dec. Dig. ☞44.]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action by the Buckeye Powder Company against the E. I. Du Pont de Nemours Powder Company and others. There was a judgment for defendants, and plaintiff brings error. Affirmed.

See, also, 196 Fed. 514.

Twyman O. Abbott, of New York City, for plaintiff in error.

William H. Button, of New York City, and Frank S. Katzenbach, Jr., of Trenton, N. J., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In this action at law, which is brought under section 7 of the Anti-Trust Act of 1890, the Buckeye Powder Company, an Ohio corporation, is the plaintiff, and three New Jersey corporations are defendants—the E. I. Du Pont de Nemours Powder Company, the Eastern Dynamite Company, and the International Smokeless Powder & Chemical Company. In essence the declaration charged that the plaintiff's business (the manufacture of black blasting powder) had been greatly injured and finally destroyed by the defendants' unlawful conduct, in violation of sections 1 and 2 of the act. Treble damages were asked for, amounting to nearly $4,000,000, although this demand was much reduced at the end of the trial, and the dispute occupied the time of a court and jury during nearly all the working days between September 24, 1913, and February 25 of the following year. The case was submitted in a comprehensive charge marked by great ability and painstaking care, and the jury returned a verdict of "no cause of action as to all the defendants." So far as the Dynamite Company and the International Company are concerned, this was a directed verdict, the trial judge holding that the evidence did not establish their participation in any unlawful act; but the liability of the Du Pont Company was submitted to the jury and was passed on by that tribunal. Nearly 70 errors are assigned on the pending writ, but 20 of them are not pressed, and some that relate to the measure of damages are not now important. Those that still need attention can be considered more satisfactorily by taking up the subjects to which they relate than by taking them up seriatim. A short preliminary statement may be desirable in order to explain some of the questions that were presented to the court and jury.

[1] First, the relevant dates. The Buckeye Company was incorporated in January, 1903. It began business the following September and abandoned the field five years later, in September, 1908. The Du

Pont Company was incorporated in May, 1903, succeeding a number of earlier enterprises. The other defendants are older; the Eastern Dynamite Company going back to 1895, and the International Company to some date we have not found in the record, but apparently several years at least before 1903. The defendants admitted their participation in an illegal trade association as late as June 30, 1904, but denied that such participation continued thereafter. In June, 1911, the three defendants, in company with 25 other corporations and individuals, were adjudged to have violated the Anti-Trust Act. United States v. Du Pont Co. (C. C. 3d Circ.) 188 Fed. 127. But, as the government's object in that suit was merely to dissolve an unlawful combination, we need hardly say that, under the long-established rules of evidence that were in force until a few months ago, the Buckeye Company (a stranger to that proceeding) could not avail itself in the present suit either of the evidence then given or of the decree. It is true that these rules have since been changed by section 5 of the act of October 15, 1914 (38 Stat. 731, c. 323), which provides that:

"A final judgment or decree hereafter rendered * * * in any suit or proceeding in equity brought by or on behalf of the United States under the anti-trust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto."

But as this statute had not been passed when the trial took place, and moreover as the express terms of the section confine it to future judgments or decrees, the Buckeye Company was obliged to offer evidence to prove the affirmative of the issues in the present suit: (1) That the defendants had violated the Anti-Trust Act; and (2) that by such violation they had so injured the plaintiff that damages should be awarded. Voluminous evidence on these issues in many of their aspects was offered by both parties, and the verdict has settled numerous questions of fact in favor of the defendants.

[2] We need not dwell upon the point that we have no power to determine (as we are asked to do) whether the verdict was in accord with the weight of the evidence, or to review the finding of the jury on any disputed fact. Our only business is to inquire whether the assignments of error that were properly taken disclose any material mistake in the trial. For this reason much of the plaintiff's argument must be laid aside as irrelevant; indeed, the brief contains so much that is nothing more than a conscious or unconscious attack on the verdict that we have not always found it easy to disentangle the questions of law that lie within our province from the questions of fact that lie outside.

In a few words, the situation below was this: The plaintiff charged, and attempted to prove, that an unlawful and extensive combination in several forms had existed for more than 30 years, the object of the evidence being to establish the fact that a more or less complete monopoly had been created of the trade in powder (especially in black blasting powder) and other explosives; that this attempted monopoly and consequent restraint of trade had been substantially successful, and was maintained from January, 1903, to the end of 1908, the whole

period covered by the suit; that R. S. Waddell, a man with large experience in the trade, who had been employed by the defendants for more than 20 years, had undertaken to organize the plaintiff corporation for the purpose of making and selling black blasting powder; that the defendants thereupon began to interfere with his project in various unlawful ways; and that these attempts to injure the business continued after the Buckeye Company had been incorporated and after its plant had been built near Peoria, Ill. Charges of oppressive conduct were set forth in great detail; some of such acts being directed specifically against the plaintiff, and other acts being directed against the plaintiff in company with other of the defendants' rivals. As a result the Buckeye Company alleged that its enterprise suffered injury from the beginning, and was finally sold out and abandoned at a serious loss.

The defendants denied these charges, and the plaintiff (having the burden of proof) undertook to prove some of them, but by no means all. Much conflicting evidence was taken, filling a record of several thousand pages. Among other matters the defendants contended that they had done nothing to bring about any abnormal conditions in the trade, and, if the plaintiff had suffered loss from such conditions, its misfortune should not be laid at their door. On the contrary, they insisted that the plaintiff's troubles were due to its own faults or blunders, such as improper organization, lack of capital, insufficient experience, inattention to business, misrepresentations to customers, inability to fill orders, and furnishing bad powder. A great deal of the record is devoted to this branch of the dispute, and many witnesses testified that the defendants did not interfere with the plaintiff's customers, or entice them away. When they left, it was because the plaintiff had not satisfied them. To refute the charge that the defendants had oppressively and illegally lowered prices, evidence was offered that during the period in question there was much independent competition, led by the plaintiff itself, and that this competition was the prevailing, if not the sole, factor in lowering prices. There was also evidence that the Du Pont Company's hold on the trade, and the volume of its business, continually diminished during the whole period of the suit.

[3] Two distinct defenses were therefore set up: (1) A denial that the Anti-Trust Act had been violated by the defendants after June 30, 1904; and (2) an assertion that, even if such violation had taken place, the plaintiff had suffered no injury therefrom, but had met with loss and final failure because its equipment had not been adequate, and its management had not been competent. Each defense raised numerous questions of fact, and, as the verdict in favor of the Du Pont Company may have been founded as well upon one defense as upon the other, the legal rulings that are relevant to either defense are open to the plaintiff's attack. Let us turn to such of the legal questions as we think it necessary to notice.

[4] 1. In our opinion the direction to find a verdict in favor of the Dynamite Company and of the International Company was correct. Neither of these corporations manufactured or traded in black blasting powder (which was the particular business the defendants were charged with restraining or monopolizing), and their indirect connection with the alleged unlawful combination was rested almost wholly

on the fact that a majority of the stock in each was owned or controlled by the Du Pont Company. Obviously, however, this fact alone did not prove their participation in a conspiracy, and, as there was almost nothing else to support the allegation, we need not take further time to discuss it. Moreover, only selected portions of the evidence are before us, and the district judge very properly called attention to this fact when he granted the exception now being considered, saying:

"In my judgment this exception to be considered should have behind it the entire record, but it is allowed and signed that the plaintiff may have the benefit of it in case I am in error in that view."

[5] 2. The plaintiff complains also because the trial judge required it to elect whether it would insist before the jury on a violation of section 1 of the Anti-Trust Act, or on a violation of section 2. Manifestly the correctness of this ruling also can only be satisfactorily reviewed upon the whole record, and what we have just said applies to this assignment as well.

[6, 7] Moreover, we may take note of the fact that this subject had evidently been a source of contention from the beginning of the suit, as will appear from Judge Rellstab's opinion in (D. C.) 196 Fed. 514, where the original declaration is printed. The question of duplicity was thus raised at an early stage, and as a result of that decision an amended declaration was afterwards filed. · But this also contained only one count, and as Judge Lanning (sitting in the Circuit Court for the District of New Jersey) had already decided in Rice v. Standard Oil Co. (C. C.) 134 Fed. 464, that a declaration in a similar suit under the same section was bad for duplicity because it combined two causes of action in one count, we think the trial judge was sufficiently justified in requiring the plaintiff to elect. But, in any event, we do not see how the ruling could have done harm. If the declaration did not support alternative charges, and if such charges were regarded as important to the case, the easy remedy by amendment was at hand. It is not surprising, however, that the plaintiff did not ask to amend, for we cannot conceive it possible that any one could doubt, at the end of this five months' trial, that the plaintiff's case depended for success upon the truth of the charge (to which practically all the evidence was directed) that the defendants had unlawfully attempted to monopolize a large part of the trade in black powder. The case was certainly tried on the merits, and the ruling complained of was harmless, even if it were formally erroneous.

[8] 3. If we are to understand that the plaintiff is seriously insisting that the court erred in refusing leave to offer the decrees in evidence that were entered in the government's suit ([C. C.] 188 Fed. 127), we shall only say in reply that we are not aware of any rule of evidence in force at the time of the trial that would have warranted the court in making a different decision. The parties in the two suits were different; the subject-matter was different; and the trial judge's ruling is so fully justified by the well-established law then existing that no supporting authority need be cited.

[9] 4. Some of the assignments are not the subject of a proper exception. At the close of the evidence the plaintiff submitted a series

of 27 requests for instruction, and the trial judge did not answer them specifically, believing that he had substantially answered them in his general instructions, as of course he had a right to do. This is evident from what he said at the end of the charge:

"As to the plaintiff's requests, as I recall it, I have touched upon every one of these requests, and I therefore will not charge them in the language requested, but counsel may take an exception, of course, to the fact that I do not specifically charge in the precise language requested."

This, of course, invited counsel to point out which instructions, if any, they did not regard as sufficiently answered in the general charge. Many decisions declare that fairness to the court requires this to be done: but the plaintiff's counsel, instead of specifying errors or omissions or insufficient answers, asked for an exception in the most general language possible: "We also except to that portion of your honor's charge which refuses to give our instructions, except as charged." The Supreme Court has several times decided that such an exception does not call the court's attention properly to what is objected to, and is therefore insufficient. Beaver v. Taylor, 93 U. S. 55, 23 L. Ed. 797; Upton v. McLaughlin, 105 U. S. 646, 26 L. Ed. 1197; Jones v. Railroad, 157 U. S. 682, 15 Sup. Ct. 719, 39 L. Ed. 856; Thiede v. Utah, 159 U. S. 521, 16 Sup. Ct. 62, 40 L. Ed. 237.

[10] And, as the fourth request of the series is not sound, the action of the trial judge is also supported by Moulor v. Insurance Co., 111 U. S. 337, 4 Sup. Ct. 466, 28 L. Ed. 447, and Bogk v. Gassert, 149 U. S. 26, 13 Sup. Ct. 738, 37 L. Ed. 631.

[11] 5. The plaintiff also complains of certain parts of the charge as erroneous on the ground that the court's language was:

"* * * Tantamount to saying that monopoly needs but to obtain a foothold, and thereafter competitors must enter the field at their peril. It was a virtual direction of a verdict for the defendants, because it was equivalent to saying that long-continued violation of the law may ripen into privilege and may become a vested right. It is a most dangerous doctrine that monopoly can gain the right to perpetuate itself by prescription; that one who may venture into the field occupied by it must do so at his peril, and, if he does so with knowledge of its existence, can claim no protection from its unlawful methods."

It is almost needless to say that the instructions of the learned judge carry no such meaning, and could have had no such effect. After a preliminary statement outlining the previous history of the powder trade, he told the jury distinctly that:

"The defendant (the Du Pont Powder Company) therefore, at the time of the organization of the plaintiff company, * * * and during the entire time the plaintiff carried on its business, was acting in violation of the Anti-Trust Act as attempting to monopolize the trade in powder, which subjected it to be dissolved as such by direct attack on the part of the United States government."

He added, however, the qualification that was called for by the nature of the case on trial:

"The fact that the status of the defendant was such, however, that, under a direct attack by the government, it would be dissolved as an unlawful combination in restraint of trade and an attempt to monopolize, would not alone make it liable in an action for damages. Such a suit can be maintained only for injuries sustained by reason of such attempted monopolization, so that, in a suit for damages, the defendant is entitled to more defenses than would

be available in a suit brought by the government for dissolution, and the plaintiff in such a suit has more to prove than is necessary to obtain a decree in the government suit. It becomes important, therefore, to inquire into the relationship which the defendant bore to the powder trade generally at the time when the plaintiff asserts its promoter first declared his intent to engage in the powder business, and its subsequent relationship toward such trade generally, and to the plaintiff in particular, during the years 1903 to 1908, within which period the plaintiff claims it was being injured by reason of the acts of the defendant, and which it alleges were unlawful and within the operation of the Anti-Trust Act, as attempts to monopolize the powder trade."

He then summarized the foregoing paragraph, repeating that the mere fact that the defendant owed much of its growth and power in the trade to unlawful acts in the past, and that it continued to enjoy the fruits of some of such unlawful acts, did not make it liable in damages. Then follows immediately one of the passages attacked in the words already quoted from the plaintiff's brief:

"This suit is unique in many respects. The plaintiff, as a corporation and as a competitor in the powder business, is due to the efforts of R. S. Waddell, its chief witness in the suit. He organized it shortly after he separated himself from his employment with the defendant, with which and its predecessors he had been identified for about 20 years. His services, while in the employment of the Du Pont interests, brought him in touch with their business policies and operations in the vending of powder. He knew of the existence of the trade associations, and of such of the restraints and limitations put upon its members as related to the apportionment of the trade and the fixing of prices. The comparative size of the defendant's capacity for output in relation to other powder manufacturers, and its influence as a factor in the trade generally, were known to him when he severed his connection, and when he conceived and began to carry out his purpose of entering into such powder field as a competitor. The plaintiff does not occupy the same position as a competitor in existence during the period that this influence was being developed, and who may have been, during the course of such development, as well as after it had reached the height of its power, injured in its business or property by reason thereof, but is here as one entering the competitive field when such growth and influence have been established. To it (the plaintiff) this influence and power of the defendant when it (the plaintiff) was launched into the powder field is not in itself actionable, even though that status is due in part to methods which are prohibited by the Anti-Trust Act, and, before the plaintiff can recover, it must establish that the defendant used its power in the trade oppressively, not necessarily against the plaintiff alone, but at least in the conduct of its business generally; that is, that it used such methods as, backed by its influential position, tended to the suppression of open competition and to obstruct the free flow of commerce (the trade conditions sought to be secured and protected by the prohibitions of the Anti-Trust Act), and that it (the plaintiff) was injured by reason thereof."

We confess our inability to see anything objectionable in this language. It states nothing but indisputable facts, and does not take on a harmful character, even when it is bracketed with the second passage complained of. This is taken out of its place in another portion of the charge, where the learned judge was dealing with a wholly different subject, namely, with the question whether the plaintiff had been properly equipped and capitalized; this matter having a direct bearing on the defendants' allegation that the Buckeye enterprise was organized merely to be sold out, and was not intended to be a bona fide factory at all:

"Mr. Waddell, as already stated, was well advised, when he promoted the plaintiff company, of the defendant's business capacity, and policies. He

had been its agent for a long period, during which several severe competitive struggles took place, and he knew the outcome thereof, and which was, generally speaking, the taking over in one form or another of such newcomers, and at least in one instance (that of the Indiana) at a considerable profit to the owners of that company. Of course, Mr. Waddell, or the company which he formed, had a right to go into business, and the motive for entering into such business is of little moment, so far as their rights were concerned; but, if he was actuated by the belief that his company would meet with a like experience after some competitive struggles, it may have a bearing upon the question whether the plaintiff was sufficiently capitalized to engage in the struggle for the market already occupied. Of course, if you find that it was sufficiently capitalized, or that it had sufficient financial backing to weather a struggle carried on under normal or lawful competitive conditions, that is a sufficient answer, and it would make no difference whether it was or was not sufficiently capitalized to meet a competition forced upon it by unlawful means."

Certainly, as we think, no sound criticism can be made of these passages, either taken singly or placed side by side, and we shall make no further comment upon them.

6. With one exception, we do not think it necessary to take up separately any other subject embraced in the assignments of error. They have all been examined and considered, and in our opinion none of the rulings and instructions complained of could have been materially harmful, even if a minute scrutiny might disclose an occasional lapse from an ideal standard. No record could come unscathed through such an ordeal after a five months' trial, and it is greatly to the credit of the district judge that so little of importance is now urged for reversal. Many of the assignments seem to be of very slight importance, indeed, and may be passed without discussion.

[12] 7. The only subject that may need a few words of separate consideration is the refusal to grant a new trial. The principal ground of complaint pressed upon us is the fact that, while the jury were deliberating on their verdict, they had in their possession two papers, whose contents are said to have been of such a nature as to influence them improperly. This matter, however, has already been heard and decided by the District Court, and we find nothing in the record to make the present situation exceptional. The facts are these: After the verdict was rendered, a motion for a new trial was made and entertained. It assigned the usual general and formal reasons (that the verdict was against the law and against the weight of the evidence, and that the charge was erroneous both in what it said and in what it failed to say), and then added a special reason to the effect that the jury had had before it certain letters and other papers that were not in evidence. Manifestly this reason required the taking of testimony, and accordingly a number of witnesses were examined. On April 10 the motion was fully argued before the court, and was refused after what was evidently a thorough consideration. The rule in the federal courts being well settled that such a refusal is a matter of discretion that will not be reviewed except for abuse, we shall only add that we have read and considered everything contained in the record on this subject and can see no sufficient ground for interfering with what was done by the court below. Indeed, we incline to think that the subject may perhaps have been brought before us under a misapprehension, for it was argued as if the district judge had refused to

hear and entertain the motion at all, except upon the special reason referred to above, although (as we understand the record) the facts do not support such a position. On the contrary, the motion was made, and was promptly entertained, the court made an order for the taking of testimony, witnesses were examined, argument was heard, and on April 10 the whole subject was disposed of by an order discharging the rule that had been granted and refusing the motion. We see nothing reviewable in such a proceeding.

On the whole case, we are of opinion that the plaintiff had a fair and patient trial, and that whatever complaint he may have should be directed to the verdict rather than the action of the court.

The judgment is affirmed.