## BUCKEYE POWDER COMPANY v. E. I. DuPONT De NEMOURS POWDER COMPANY ET AL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 7. Argued April 30, May 1, 1917; restored to docket for reargument June 10, 1918; reargued November 13, 1818.—Decided December 9, 1918.

In an action for triple damages under § 7 of the Sherman Act, where the scope of the declaration, plaintiff's interpretation of it and the nature of the proofs characterized the case as based on § 2 of the Act, dealing with attempted and effected monopolies, rather than on § 1, dealing with contracts and combinations in restraint of trade, and where the case was fully tried upon this basis, without objection, and the jury was allowed to consider contracts so far as they bore upon the supposed attempt to subject plaintiff to a monopoly,—

*Held:* (1) That technical error committed at the close of the trial in requiring plaintiff to elect whether it would rely on the first or second section of the act (whereupon it elected the second without asking to amend,) was harmless. P. 60.

(2) That instructions pointing out that § 2 extends to attempts to monopolize were advantageous rather than harmful to plaintiff. P. 62.

In such an action, where the only ground for holding a defendant is responsibility (through stock ownership) for the acts of another defendant, error in directing a verdict for the former is harmless if the latter be exonerated upon the merits by the jury, after instructions fairly presenting the case against it. P. 62.

Before the Clayton Act, c. 323, 38 Stat. 731, a judgment in a Government proceeding finding a company guilty of an attempt to monopolize was inadmissible in a private action for triple damages under § 7 of the Sherman Act. P. 63.

The provisions of § 5 of the Clayton Act for admitting such judgments, "hereafter rendered" in Government cases, in other litigation, and for suspending the statute of limitations as to private rights pending Government prosecutions, do not affect retrospectively, on review, a judgment rendered in an action for triple damages before the Clayton Act was passed. *Id.*

A corporation suing for triple damages under the Sherman Act has

no ground to complain of the mere existence of a power in trade attained by a defendant and known to the organizers of the plaintiff before the plaintiff was created, without proof of some oppressive use of it afterwards. P. 63.

An instruction *held* to state correctly that, on the question whether plaintiff's failure in trade was due to its incapacity or to defendant's oppression, the jury might consider whether the motive in organizing plaintiff was to sell out to defendant or to compete. P. 64.

In an action for triple damages under the Sherman Act, the court excluded statements by third parties of their reasons for refusing or ceasing to do business with plaintiff. *Held* correct, as the statements were wanted not as evidence of motives but as evidence of facts recited as furnishing the motives. P. 65.

Where the jury found for defendant, rulings as to damages *held* immaterial. P. 65.

223 Fed. Rep. 881, affirmed.


. THE case is stated in the opinion.


*Mr. Twyman O. Abbott*, with whom *Mr. Willard U. Taylor* was on the briefs, for plaintiff in error, among other points, urged that § 7 of the Sherman Act, prescribing a remedy for injuries suffered "by reason of anything forbidden or declared to be unlawful by this act," gives a single and indivisible right of action, and makes no distinction between the things that are declared to be unlawful by § 1 and those that are declared to be unlawful by § 2; citing *United States* v. *Kissel*, 218 U. S. 601, 607; *Cilley* v. *United Shoe Machinery Co.*, 202 Fed. Rep. 598; *Strout* v. *United Shoe Machinery Co.*, 202 Fed. Rep. 602; *Corey* v. *Independent Ice Co.*, 207 Fed. Rep. 459, 463; *Monarch Tobacco Works* v. *American Tobacco Co.*, 165 Fed. Rep. 774; *People's Tobacco Co.* v. *American Tobacco Co.*, 170 Fed. Rep. 396, 407; *Occidental &c. Co.* v. *Comstock Tunnel Co.*, 111 Fed. Rep. 135. Furthermore, in practically all equity cases brought by the Government under the Sherman Act, both §§ 1 and 2 were involved, and the Government had never been compelled to elect under

which section it would proceed. Under the Clayton Act, it was now provided that private persons might sue in equity. Act of October 15, 1914, § 16, 38 Stat. 731. If the ruling of the trial court were correct, the absurd situation would be presented of requiring a private person to elect in an action at law, but not in an equity proceeding. The error in requiring an election, was not harmless. The opinion below, in stating that "practically" all the evidence was directed to a monopoly, conceded that there was some to show a contract or combination. But in any event, plaintiff was entitled to have the scheme or combination considered as a whole, by the jury, and not in part only.

Amendment at that stage of the case was entirely out of the question, as a matter of fact, even if not as a matter of law. Furthermore, the order came as a complete surprise to the plaintiff as it was a reversal of the earlier position taken by the court upon the motion to strike the declaration. Plaintiff relied, and had a right to rely, upon the ruling made at that time, as being the law of the case.

Defendants did not acquire the right to perpetuate their monopoly by reason of long continued misconduct; and the fact that defendants were large and powerful as factors in the trade and that plaintiff's promoter had knowledge of this fact, and of their monopoly and of their practices and policies in maintaining it, did not alter plaintiff's right of action under § 7 of the act to recover for injuries suffered by reason of conduct forbidden by that act. Plaintiff was not bound to enter the business at its peril by reason of this knowledge, nor did plaintiff occupy any different position as a competitor than it would have occupied if it had been in existence during the period that the defendant's influence was being developed, and had suffered injuries at the hands of the defendants during said period or afterwards. In *Loewe* v. *Lawlor*, 208 U. S.

274, it was said that: "The act made no distinction between classes." It did not create any distinction between the rights or remedies of a person injured by an unlawful combination, whether such person or corporation was in existence before the combination had developed its power and influence, or afterwards; or whether it had previous knowledge, or acquired it later.

It was unnecessary and improper for the court to instruct the jury upon a supposititious case which was not in issue. The question was not what would have been the plaintiff's rights had it been in existence earlier, nor what would have been the rights of some other person who might not have been cognizant of the facts. The sole question before the court was, What are plaintiff's rights now? *United States* v. *Breitling,* 20 How. 252; *Railroad Co.* v. *Houston,* 95 U. S. 697, 703.

The question whether plaintiff was sufficiently capitalized to compete was a question of fact, not of intention. Even if the intention had been, as it was not, to be bought out rather than to compete, that would not afford the slightest excuse in law for the unlawful acts of the defendants, since the exercise of a legal right cannot be affected by the motive which controls it. *Sullivan* v. *Collins,* 107 Wisconsin, 291; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Strait* v. *National Harrow Co.,* 51 Fed. Rep. 819; *Northwestern Consolidated Milling Co.* v. *Callam & Son,* 177 Fed. Rep. 786; *Independent Baking Powder Co.* v. *Boorman,* 130 Fed. Rep. 726.

A combination of individuals engaged in interstate commerce is a veritable outlaw. It has no right to exist. And whatever it does "by reason" of which any person suffers injury, must be compensated for. The contention is that any and all injuries which may be suffered by reason of the competition induced by an unlawful combination in interstate commerce, must be

compensated for regardless of whether the acts which caused them were "fair" or "unfair," and regardless of whether such acts might have been in themselves lawful.

It has been several times held by this court that it is not alone the actual doing of the prohibited thing which the anti-trust acts strike at, but the power to do it. *National Cotton Oil Co.* v. *Texas*, 197 U. S. 115, 129; *Swift & Co.* v. *United States*, 196 U. S. 375; *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 290, 322; *Monarch Tobacco Works* v. *American Tobacco Co.*, 165 Fed. Rep. 774, 780.

The reasons given by customers for ceasing to do business with plaintiff, as shown by their letters and by their statements to its officers and agents, should have been received. The question of the admissibility of such evidence is no longer an open one since the decision in *Lawlor* v. *Loewe*, 235 U. S. 522. 3 Wigmore, Evidence, § 1729 (2); *Elmer* v. *Fessenden*, 151 Massachusetts; 161; *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285, 295. The testimony rejected by the trial court all touched upon the vital issue whether the acts charged against the defendants and their co-conspirators had really accomplished the object of "inducing" consumers not to use plaintiff's product.

The decrees in the "Government Case" which adjudged the defendants guilty of violation of the Sherman Act upon a state of facts almost identical with those presented in this case, and directed their dissolution, should have been received. *Portland Gold Mining Co.* v. *Stratton's Independence*, 158 Fed. Rep. 63. The grounds upon which plaintiff relies to sustain admissibility are: (1) As evidence of the fact that the defendants had been adjudged guilty of forming the same combination and conspiracy in restraint of trade which was in issue. *St. Louis Mutual Life Ins. Co.* v. *Cravens*, 69 Missouri, 72; 1 Greenleaf.

Evidence (16th ed.), § 538; *National Cash Register Case,* 222 Fed. Rep. 599, 629; *Coffey* v. *United States,* 116 U. S. 436. (2) As an admission of guilt. *Last Chance Mining Co.* v. *Tyler Mining Co.,* 157 U. S. 683, 691; *United States* v. *Parker,* 120 U. S. 89; *Nashville &c. Ry. Co.* v. *United States,* 113 U. S. 261.

As supporting the first of these grounds, it was important to consider that plaintiff's president and chief promotor and sponsor made the petition which led to the government suit, assisted actively and was virtually treated as the plaintiff in that case,—facts which were fully brought out by the defendants in this one. As supporting the second ground, the decree in the government case was made by consent, after months of negotiation.

*Mr. William H. Button* and *Mr. Frank S. Katzenbach, Jr.,* with whom *Mr. John P. Laffey* was on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action brought by the plaintiff in error to recover triple damages under the Sherman Act, July 2, 1890, c. 647, § 7, 26 Stat. 209, 210. There was a trial that lasted five months, in which the facts were shown at great length, and after a very full and fair charge by the presiding judge the jury found a verdict in favor of the principal defendant, the E. I. DuPont de Nemours Powder Company, on the merits, and for the other two by direction of the Court. Elaborate exceptions were taken but they were overruled by the Circuit Court of Appeals. 223 Fed. Rep. 881. 139 C. C. A. 319.

The first one that we shall deal with complains of the Court's sustaining a motion at the end of the trial that the plaintiff should elect whether it would rely upon the

first or the second section of the Sherman Act. If the case were different the question presented might be grave. In the one before the Court the only error was in the use of the word election and the implied admission that the trial possibly could be taken not to have proceeded upon the second section of the act, coupled of course with § 7, giving a private action to persons injured by breach of the statute. The first section deals with contracts in restraint of trade, the second with monopolizing and attempting to monopolize it. The declaration, after stating the organization of the plaintiff in January, 1903, for the purpose of manufacturing and selling powder, particularly black blasting powder, alleges a long previous conspiracy on the part of various companies to monopolize the trade in explosives, which ended in the organization of the E. I. DuPont de Nemours Powder Company in May, 1903, in order more completely to carry out that end. It is alleged that the defendants and others have carried out that end, and that in pursuance of it they did acts, detailed at great length, for the purpose of compelling the plaintiff to join them or else go out of business. That, with an allegation that they succeeded and forced the plaintiff to sell out at a loss, is the whole scope of the declaration. There was a motion to strike it out for duplicity, but the motion was overruled on the ground that the declaration was as we have stated. 196 Fed. Rep. 514. The trial proceeded on that footing without complaint. So far as contracts bore upon the supposed attempt to subject plaintiff to the monopoly the jury was allowed to consider them. The case was fully tried upon the ground taken by the plaintiff at the outset and the only one on which it could hope to succeed. The plaintiff did not ask to amend. It is unnecessary to advert to the statement of the judge that in his opinion the exception to be considered should have the whole record behind it, or whether, as has been suggested, the

second section is not the only one addressed to transac-. tions such as were alleged. *Northern Securities Co.* v. *United States,* 193 U. S. 197, 404. When the plaintiff, after the ruling of the judge, went through the form of electing to rely upon acts done contrary to § 2 of the statute, it simply adhered to the interpretation of its declaration that it had accepted at the beginning and had endeavored to sustain throughout. Portions of the charge are criticised in this connection for pointing out to the jury that § 2 embraced not only monopoly but attempts to monopolize. But this was wholly to the plaintiff's advantage, as it explained that if the plaintiff was driven out of business by the defendant's acts it was entitled to recover if those acts were done in the course of an attempt to monopolize, whether or not they were crowned with success. It allowed the jury to consider everything that indicated such an attempt.

Next in importance is an exception to the Court's directing a verdict in favor of the Eastern Dynamite Company and the International Smokeless Powder and Chemical Company. There were no acts done by either of these companies that were aimed at the plaintiff. The only substantial ground for charging them was that if they were parties to a conspiracy as alleged they became responsible for the acts of the DuPont Company as their own. As the jury exonerated the latter company this ground fails. So that even if the ruling was wrong it did no harm unless something more can be found in the case. *Portland Gold Mining Co.* v. *Stratton's Independence,* 158 Fed. Rep. 63. The ruling did not import that there was no evidence against the DuPont Company, the case against which was put fairly to the jury, but that there was no evidence that the other defendants conspired with it, so far at least as the plaintiff was concerned. These companies did not make black blasting powder and had no interest immediately adverse to the plaintiff.

The basis of the charge of conspiracy affecting the black blasting powder business was that the DuPont Company directly or through another company was interested in their stock. No other is suggested in the declaration and it would be hard to extract any act from the evidence. Certainly none could be found that was more than an infinitesimal fraction of those done by the DuPont Company. Here again the Court was of opinion that the exception to be considered should have the whole record behind it, but on the record as it stands we think it sufficiently appears that the plaintiff suffered no real harm.

The next matter requires but a few words. The plaintiff offered in evidence decrees in a proceeding by the Government finding the DuPont Company guilty under the Sherman Act of an attempt to monopolize. 188 Fed. Rep. 127. These of course were held inadmissible. The Court also ruled that the statute of limitations barred recovery for any damage suffered before September 18, 1905, six years before the beginning of the present suit. The plaintiff now contends that the Clayton Act of October 15, 1914, c. 323, § 5, 38 Stat. 731, making admissible such criminal judgments "hereafter rendered," in some way should affect our decision upon a ruling made years before, and that by virtue of the same section the running of the statute of limitations was suspended retrospectively as to claims already barred, pending the Government suit. These matters do not need more than a statement of what was argued and what was done.

Another exception seems to us over-critical. Mr. Waddell, the organizer of the plaintiff corporation and chief witness on its behalf, started it directly after leaving the DuPont Company, with which he had been for many years. He knew all the elements of the situation before he embarked on the venture, and did not do so until the DuPont Company had reached the height of its power. The judge remarked in his charge that the plaintiff did

not stand like a competitor that had been in existence
while the defendant's influence was being developed and
that had been injured in its business during the course of
such development—that the mere existence of the de-
fendant's power as it was when the plaintiff was born was
not in itself a cause of action to the plaintiff, but that
the plaintiff must show that the defendant used its power
oppressively, if not against the plaintiff, at least in the
course of defendant's business. This was innocuous truth.
The plaintiff could not be called into being in order to
maintain a suit for conduct that made it not pay to be
born. Claims for such antenatal detriments are not much
favored by the law. See *National Council, United American
Mechanics, v. State Council of Virginia,* 203 U. S. 151, 161.

Another statement in the charge concerning Mr.
Waddell's knowledge of the defendant's power and policy
is complained of, but the complaint seems to us based
upon a perversion of its meaning. The defendant had
put in evidence tending to show that Mr. Waddell or-
ganized the plaintiff merely to sell it out to the defendant,
without any real intent to compete. The Court said
that of course Mr. Waddell had a right to go into business
and that his motive was of little moment so far as that
was concerned, but that it might have a bearing on the
question whether the plaintiff was sufficiently capitalized
to meet normal conditions, adding that it did not matter
whether it was or not as against a competition forced
upon it by unlawful means. This is treated as if it had
made the motive an answer to the claim. What it really
did was to state correctly that, on the question whether
the plaintiff's failure was due to the defendant's oppres-
sion or to the plaintiff's incapacity, the jury in estimating
the evidence and finding what the facts were might con-
sider Mr. Waddell's motive if they should find it to have
been what the defendant alleged.

We agree with the Circuit Court of Appeals that it is not

necessary to deal specifically with all the details brought up by the dragnet of the plaintiff's exceptions and assignments of error, sixty-nine in number and occupying more than sixty pages of the record. *Central Vermont Ry. Co.* v. *White,* 238 U. S. 507, 508, 509. Several exceptions were taken to the exclusion of statements by third persons of their reasons for refusing or ceasing to do business with the plaintiff. We should be slow to overthrow a judgment on the ground of either the exclusion or admission of such statements except in a very strong case. But the exclusion in this instance was proper. The statement was wanted not as evidence of the motives of the speakers but as evidence of the facts recited as furnishing the motives. *Lawlor* v. *Loewe,* 235 U. S. 522, 536; *Elmer* v. *Fessenden,* 151 Massachusetts, 359, 362. In view of the finding of the jury the rulings as to damages are immaterial and need no discussion here. The defendant put in evidence tending to show that its conduct was not the cause of the plaintiff's failure, and its evidence, or the weakness of the plaintiff's, prevailed. Our conclusion upon the whole case is that the plaintiff has had a fair trial and that the judgment should not be disturbed.

*Judgment affirmed.*