**KECO INDUSTRIES, INC., an Ohio corporation, 2438 Beekman Street, Cincinnati, Ohio 45214, Plaintiff,**

v.

**BORG–WARNER CORPORATION, a Delaware corporation, York, Pennsylvania 17400**

**and**

**York Division, Borg-Warner Corporation, a Delaware corporation, York, Pennsylvania 17400, Defendants.**

**Civ. No. 69–488.**

United States District Court, M. D. Pennsylvania.

Dec. 17, 1971.

---

3. This is by no means free from doubt and I do not pass on the question here.

Health L. Allen, Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., Paul W. Steer, Steer, Strauss, White & Tobias, Cincinnati, Ohio, for plaintiff.

Spencer R. Liverant, Donn I. Cohen, Liverant, Senft & Cohen, York, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

This matter is before the court on motion of the defendant, Borg-Warner Corporation, for partial judgment on the pleadings.

Keco Industries, Inc. (hereinafter referred to as Keco), seeks recovery from Borg-Warner Corporation, York Division, (hereinafter referred to as York) on grounds that York maliciously interfered with Keco's contract relations with the Government; that York induced a breach of the contract between Keco and the Government; and that York violated the Clayton and Sherman Anti-trust Acts. York has counterclaimed seeking an indebtedness on account between the two parties arising from their contractural relations.

The complaint avers that the court has jurisdiction of the above-captioned matter by virtue of diversity of citizenship between the respective parties, 28 U.S.C. § 1332. Also, the plaintiff presumably attempts to invoke jurisdiction of the court under 28 U.S.C. § 1337 by its averment that "[t]his action is also brought under Sections 15 and 26 of the Act of Congress of October 15, 1914, c. 323, § 4, 38 Stat. 731, being a part of the Act of Congress known as the *Clayton Act,* and Section 2 of the Act of Congress of July 2, 1890, c. 647, 27 Stat. 209, as amended, being commonly known as the *Sherman Act.*" (Emphasis in original.) Apparently this averment was intended to read that the action is brought under Sections 15 and 26 of Title 15, being a part of the Act of Congress of October 15, 1914, c. 323, § 1, 38 Stat. 730 et seq., known as the *Clayton Act,* and Section 2 of Title 15 of the Act of Congress of July 2, 1890, c. 647, § 2, 26 Stat. 209, being known as the *Sherman Act.*[1]

York's motion asks the court to enter partial judgment on the pleadings in favor of York on the ground that "[d]efendant is entitled to partial judgment as a matter of law on the undisputed facts appearing in the pleadings in that the pleadings do not set forth a claim against the Defendant upon which relief can be granted under the antitrust laws of the United States."

The relevant allegations in plaintiff's complaint which incorporates all claims within the context of one court may be summarized as follows:[2]

1. Keco designs, engineers and fabricates air-conditioning and air-handling equipment for special purposes, particularly for use in the ground support and aerospace fields under contracts with the United States Government or with others who are performing work under contract for the Government. These contracts must be performed promptly and efficiently.

2. York Division of Borg-Warner designs, engineers and fabricates compressors and related equipment and enters into contracts for sale of said compressors throughout the United States.

3. The business of both Keco and York is of an interstate nature and character.

4. On June 29, 1969, Keco and the Government entered into a contract (DSA 700–68–C–9883) wherein Keco was to produce Two hundred seventy-seven (277) 18,000 BTU multi-package air conditioners. Previously, on

---

1. 15 U.S.C. § 15 provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

15 U.S.C. § 26 provides: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

2. It would have been preferable and better pleading practice had the plaintiff complied with Rule 10(b) and set forth each claim in separate counts.

June 28, 1968, Keco and the Government entered into contract (DAAG 11–68–C–1487) wherein Keco was to produce Four hundred fifty-two (452) 18,000 BTU multi-package air conditioners. The contracts presumably were for production of air conditioners for use in the aerospace industry.

5. The contracts on their face provided for the use of Thermo King Compressors Model 2S19M, within the air-conditioning unit. Thermo King compressor units are also specified in bidding on other air-conditioning units.

6. Although the contracts provided otherwise, the Government agreed [3] that they would substitute or employ compressors designated as Keco Part No. 64277 (hereinafter Keco Compressors) in fabrication of the air conditioners.

7. The Keco Compressor is a York Compressor, sold by York to Keco and modified by Keco so that it is physically interchangeable with the Thermo King Compressor.

8. Thermo competes with Keco in bidding on Government procurement for air conditioners wherein Thermo compressors are specified, air conditioner sales to the Government by Thermo have been highly profitable not only because of the sale and use of the Thermo Compressor but also the sale of the air-conditioning unit where Thermo King Compressors are specified. Accordingly, it has been impossible for any competitor of Thermo to meet Thermo's price.

9. York, in addition to selling compressors to Keco, supplies to Thermo thousands of other compressors each year. York's sales to Thermo are much larger and more profitable than Keco's potential purchases from York.

10. York, in disregard of Keco's rights pursuant to its contracts with York and under "its [York's] con-tracts with the Government, through its officers and agents, disparaged the Keco Compressor with the Government, and caused the Government and its agents to disaffirm its agreement with Keco to permit" Keco to substitute the Keco Compressor for the Thermo Compressor with the consequence that Keco was obligated to purchase the more expensive Thermo King Compressor.

11. Keco further avers that "York's actions were in restraint of trade in that said actions were committed in order (a) to protect its exclusive multiple sales to Thermo for Thermo's automobile Air Conditioners; (b) to curry favor of Thermo by eliminating a competitor to Thermo's compressor, Model 2S19M, and by forcing Keco to purchase compressors from Thermo; and (c) to avoid the ill will of Thermo that York might have incurred in assisting Keco in creating a product which would compete with Thermo's compressor, Model 2S19M."

12. "York's action unfairly put Keco in a position which made it impossible for Keco to compete for the sale and production of Air Conditioners of the class contained in said Contracts."

In consideration of York's motion for partial judgment on the pleadings, all well-pleaded facts appearing in Keco's complaint are assumed true and all denials made by York are deemed false. Partial judgment on the pleadings will be granted only if, on the facts as so admitted, the movant, York, is entitled to judgment as a matter of law. Huntt v. Government of Virgin Islands, 339 F.2d 309 (3d Cir. 1964). York seeks only a partial judgment on the pleadings for it concedes for purposes of this motion that Keco has stated a valid cause of action under common law, but claims that Keco has failed to allege a viable cause of action under Section 2 of the Sherman Act.[4]

---

3. No indication is made within the complaint whether this was an oral or written agreement.

4. In plaintiff's response to defendant's earlier motion to dismiss, plaintiff admits that the essence of the antitrust claim is

Initially the court must consider whether or not the complaint substantially complies with Rule 8(a) (2) of the Federal Rules of Civil Procedure. Rule 8(a) (2) provides that a complaint need only be "a short and plain statement of the claim showing that the pleader is entitled to relief".

Defendant asserts, as one of the grounds in support of its motion for partial summary judgment on the pleadings, that the complaint as to the antitrust violation alleged under Section 2 of the Act should be dismissed for failure to set forth factual allegations consistent with the necessary elements which constitute a Section 2 offense.

Indeed, many earlier court decisions expressly repudiated and/or distinguished the applicability of the liberal "notice" provision of Rule 8(a) to complaints in antitrust, *see,* Dublin Distributors Inc. v. Edward & John Burke Ltd., 109 F.Supp. 125 (S.D.N.Y.1952); Bader v. Zurich Genl. Accident & Liability Ins. Co., 12 F.R.D. 437 (S.D.N.Y.1952) and required that the pleadings be more extensive than those sounding in contract or tort. The rationale of the earlier decisions was that the inherent complexity and difficulty of antitrust litigation required the pleader to more explicitly set forth his cause of action so that ill-conceived or nonsupportable actions could be thwarted from their inception. Recent decisions, however, have drawn upon that same complexity confronted in antitrust litigation as a basis for adopting a more liberal pleading requirement in the spirit of the Rule 8 notice provision. *See,* 2A Moore, Federal Practice § 8.17[3] at 1738–53 (1968).

In Knuth v. Erie Crawford Dairy Coop. Assoc., 395 F.2d 420, 423 (1968), the Third Circuit, to whose decisions this court is bound, held that "[t]he 'liberal' approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all the details and specific facts relied upon cannot properly be set forth as part of the pleadings." This liberal approach complies with the general notice provision of Rule 8(a) (2), and pursuant to that Section and to the decisions thereunder, the law only requires that the complaint in a private antitrust action need only set forth allegations adequate to show a violation of the antitrust acts resulting in damages to the plaintiff.

The court in this instance having reviewed the relevant authorities and being mindful of the liberality which attaches to interpretations of antitrust complaints, nevertheless concludes that Keco has failed to state a cause of action under Section 2 of the Sherman Act.

Section 2 of the Sherman Act provides as follows:

> "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

This Section makes it illegal for any "person" to "monopolize" or "combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . ."

No suggestion has been made by Keco in the complaint that York is engaged in a combination or conspiracy with any other persons to monopolize any part of the trade or commerce among the several states. Thus, the court need only inquire whether or not a viable claim of individual monopolization or individual

a violation of Section 2 of the Sherman Act, in that "York by its disparagement attempted to exclude and did exclude Keco from competing with York's good customer Thermo King".

attempted monopolization has been set forth.

As a background, it is said that the statutory offense of "monopolization" under Section 2 exists when it is shown that the person from whom recovery is sought possesses monopoly power in a relevant geographic and product market together with the intent and purpose to exercise that monopoly power, United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); United States v. E. I. Du Pont de Nemours & Co., 351 U.S. 377, 76 S. Ct. 994, 100 L.Ed. 1264 (1956), and within this context the term "monopoly power" has been variously described as the power or ability to fix prices or to exclude competition in the relevant market. United States v. Grinnell Corp., supra.

In contrast to the offense of "monopolization," it is said that in order to claim and prove "attempted monopolization" there must be a "dangerous probability" of a monopoly. Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); Buckeye Powder Co. v. E. I. Du Pont de Nemours Powder Co., 248 U.S. 55, 39 S. Ct. 38, 63 L.Ed. 123 (1918), together with overt acts committed in furtherance thereof within a relevant market, Lorain Journal Co. v. United States, with the specific intent of the person charged to achieve the unlawful goal of monopoly power, Times-Picayune Publishers Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953).

In both instances; i. e., monopolization, or attempted monopolization, the offense may be committed by a single "person" or by "persons" acting in concert with one another by virtue of a combination or conspiracy. If a combination or conspiracy is alleged, and of course later shown, the general intent requisite to the offense of monopolization is conclusively presumed, United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); whereas, in the case of a claim of an individual monopolization this general intent must be shown.

Preliminarily, it should be said that in this case no cause of action has been stated under the "attempted monopolization" provision of Section 2. The complaint fails to aver that York has a "dangerous probability" of achieving a monopoly nor is it averred that York's alleged acts were overt acts conducted with the "specific intent" of achieving a monopoly. Since the complaint is not framed in the language of an alleged "attempted monopolization" nor has the plaintiff Keco so argued in the responses to defendant's motion, the court finds that no claim has been averred under the "attempted monopolization" provision.

With respect to the claim of "monopolization" in violation of Section 2, the court again finds plaintiff's complaint lacking in substance. The word "monopoly" cannot be found within the allegations designated in the complaint. It is not expressly averred that York has "monopolized" any part of the trade or commerce and the court assumes, although not expressly stated in the complaint, that the relevant market within which York's monopolization is to be measured is "made up of compressors of the kind of Thermo-King Model 2S19M and a 'relevant market' made up of air conditioners incorporating them," as was argued to the court in Keco's response to York's motion.

Ignoring those deficiencies, the court fails to perceive how York, alone, for purposes of this motion, can "monopolize" in the relevant market of furnishing air-conditioning and air-handling equipment for special purposes and applications in the ground support and aerospace fields when the allegations fail to delineate the source of York's power, other than by disparagement, to fix prices or exclude competition in the specialized government contract market.

Keco's claim is, in essence, that York, by its disparagement, deliberately attempted to exclude and did exclude Keco

from competing with York's good customer. There is no allegation that York has the *power to control prices or exclude competition,* but only that York *has excluded competition* in the specialized market.

The Supreme Court, in United States v. E. I. Du Pont de Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956), addressed the question of the relationship under Section 2 violations of the power to control prices and to exclude competition, and said, at 392, 76 S.Ct. at 1005:

> "Prices and competition are so intimately entwined that any discussion of theory must treat them as one. It is inconceivable that price could be controlled without power over competition or vice versa. This approach to the determination of monopoly power is strengthened by this Court's conclusion in prior cases that, when an alleged monopolist has power over price and competition, an intention to monopolize in a proper case may be assumed."

No contention has been made that York, alone, has the power to control prices in the relevant market herein. Nor has York's "power to exclude" competition in the area of governmental procurement contracts been sufficiently delineated by relationship or otherwise.[5]

Keco has alleged no more than that it was excluded from competition by reason of York's disparagement, and disparagement without more, although actionable at common law, is not enough to bring this action within the Sherman Act. Atlanta Brick Co. v. O'Neal, 44 F. Supp. 39 (E.D.Tex.1942).

Keco has suggested that actionable "reciprocity" as applied to the Sherman Act is involved herein, *see,* Kintner, The Anatomy of Reciprocity, 56 A.B.A.J.

232–36 (1970), but the court finds no merit in this argument.

For the reasons stated above defendant's motion for a partial judgment on the pleadings will be granted and an appropriate order will be entered, without prejudice.

---

5. Government procurement is governed by 41 U.S.C. § 252, which, the court recognizes, incorporates free competition provisions. It is noteworthy that by amendment defense contracts and space administration contracts are exempted from that specific title and section. 41 U.S.C. § 252(a) (1).