**WEINSTEIN et al. v. UNITED STATES.**

(Circuit Court of Appeals, First Circuit.
March 3, 1926.)

No. 1936.

**1. Indictment and information ⬧⟹125(5½).**

Single count of indictment charging conspiracy to commit several offenses against National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) is not bad for duplicity.

**2. Indictment and information ⬧⟹111(4)—Indictment for conspiracy to violate National Prohibition Act is not bad for failure to allege want of permit (National Prohibition Act, tit. 2, § 32 [Comp. St. Ann. Supp. 1923, § 10138½s]).**

Indictment charging conspiracy to unlawfully manufacture, sell, and transport intoxicating liquor is not bad for failure to allege want of permit, in view of National Prohibition Act, tit. 2, § 32 (Comp. St. Ann. Supp. 1923, § 10138½s).

**3. Criminal law ⬧⟹730(7) — Opening remarks of prosecuting attorney, in prosecution for conspiracy to violate National Prohibition Act, though unsupported by evidence, held not prejudicial, in view of court's statement (National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 [Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm]).**

In prosecution for conspiracy to violate National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm), wherein defendants were alleged to have formed an association through which their business was to be conducted, remarks of prosecuting attorney in opening statement to effect that one of defendants was to get police protection, and that another was president and treasurer of association, though unsupported by evidence, held not prejudicial, in view of court's statement.

**4. Conspiracy ⬧⟹43(12)—Proof of overt act, in addition to fact of conspiracy, is essential to valid conviction for conspiracy to commit an offense (Criminal Code, § 37 [Comp. St. § 10201]).**

To sustain conviction under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to commit an offense, it is not only necessary to prove that conspiracy was entered into, but that some overt act was performed in furtherance of it, though proof of one of overt acts alleged is sufficient.

**5. Criminal law ⬧⟹423(4)—In prosecution for conspiracy to violate National Prohibition Act, testimony by members of alleged association, but not indicted, held properly admitted as coming from co-conspirators (Criminal Code, § 37 [Comp. St. § 10201]; National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 [Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 (Comp. St. Ann. Supp. 1923, §§ 10138½c, 10138½jj, 10138½m, 10138½mm), testimony of various defendants and others be-

longing to alleged association, but not indicted, held properly admitted as coming from co-conspirators.

**6. Criminal law ⬧⟹1119(4)—Assignment of error, complaining of remark of prosecuting attorney, held not to present anything for review, in absence of showing of related facts (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), assignment of error complaining of remark of prosecuting attorney with reference to some phase of case, "George did it this time—George Weinstein," a defendant, held not to present anything for review, in absence of statement in record as to testimony or situation to which it applied.

**7. Conspiracy ⬧⟹43(12)—Proof of unlawful alcoholic content of liquor trafficked in held not necessary on charge of conspiracy to violate National Prohibition Act (National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 [Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm]).**

In prosecution for conspiracy to violate National Prohibition Act, tit. 2, §§ 3, 6, 21, 25, 26 (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm), proof that prohibition law was in fact violated was unnecessary, and refusal of instruction to acquit for want of proof that liquor trafficked in by defendants was of unlawful alcoholic content was not error.

**8. Criminal law ⬧⟹304(20)—Court was not authorized to say that witnesses testifying concerning "moonshine" did not mean moonshine whisky, as affects necessity for proof of alcoholic content (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), court was unauthorized to say as matter of law that jury was not authorized to find as matter of common knowledge that, when witnesses testified concerning "moonshine" manufactured, transported, and sold, they meant moonshine whisky, as affects necessity for proof of alcoholic content.

Bingham, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

George Weinstein and others were convicted of conspiring to violate the National Prohibition Act, and they bring error. Affirmed.

William H. Lewis, of Boston, Mass., for plaintiff in error Weinstein.

Leo A. Rogers, of Boston, Mass., for plaintiffs in error Siegel and Zetzel.

George R. Farnum of Boston, Mass. (Harold P. Williams, of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The three plaintiffs in error, Weinstein, Siegel, and Zetzel, were indicted, with six others, for unlawfully conspiring to commit offenses denounced by sections 3, 6, 21, 25, and 26 of title 2, Act Cong. October 28, 1919, commonly known as the National Prohibition Act (Comp. St. Am. Supp. 1923, §§ 10138½aa, 10138½c, 10138½jj, 10138½m, 10138½mm), on or about the 10th day of December, 1924.

A jury in the court below returned a verdict of "guilty" against them, and they have brought this writ of error, alleging that the court erred in overruling a demurrer to the indictment, in the reception of evidence, and in the failure to give requested instructions. [1] The demurrer, which was overruled, alleged that the indictment was void for duplicity, because it charges in a single count a conspiracy to commit more than one offense, to wit: The offenses denounced by several sections of the National Prohibition Act; that each offense should be set forth in a separate count; also that the indictment charges conspiracy to "willfully, knowingly, and unlawfully * * * manufacture, possess, sell, and transport intoxicating liquors containing one-half of one per cent. or more of alcohol by volume and fit for beverage purposes," but that it does not allege that these unlawful acts were done without a permit.

Upon motion a bill of particulars was filed by the government, alleging in substance that, during the period from about December 10, 1924, to the date of the indictment, the plaintiffs in error, with the other defendants who were indicted with them, held meetings at the place of Weinstein, in Chelsea, in the district of Massachusetts, and at various other places, and organized an association for the following purposes:

"(a) To foster, promote and protect the interests of the defendants, namely, George Weinstein, Ernest Henry, alias Dutch Henry, Meyer Brown, Louis Siegel, Sam Goldsmith, Sam Zetzel, Arthur Woodrow, Wolf Palais, and Sam Bigler, in the wholesale manufacture, possession, sale, and transportation of intoxicating liquor.

"(b) To organize all the wholesale liquor dealers and all manufacturers of liquor in said Chelsea and vicinity into one association.

"(c) To arrange for the illegal sale of intoxicating liquor through one agency, for the purpose of avoiding competition, and for the purpose of maintaining the steadiness of the liquor market in said Chelsea."

It also alleged that, pursuant to said purposes, an arrangement was made between Weinstein, Brown, Siegel, Goldsmith, Zetzel, Palais, Bigler, and other persons, with Ernest Henry, alias Dutch Henry, that he was to sell all the liquor manufactured by them, and no intoxicating liquor should be sold by them to any retail liquor dealer in Chelsea, except through said Henry; that from about December 10, 1924, to about February 15, 1925, said parties did deliver intoxicating liquor to the places designated by the said Henry; that the office of the association was on the premises of Weinstein, and he received a rental for part of his premises for the conduct of said illegal business; that one Woodrow did transport and deliver intoxicating liquor pursuant to the arrangement made with said Henry to retail liquor dealers in Chelsea; that said Henry did at various times during said period pay various sums of money to the said association for liquor purchased from it pursuant to the arrangement made with it and did cause intoxicating liquor to be delivered to various liquor dealers in said Chelsea; that all ingredients used in the illegal manufacture of liquor by the members of said association were to be purchased from said Weinstein; that eligibility to membership in said association was engagement in the business of illegally possessing, bartering, selling, and delivering intoxicating liquor, all or either of said acts.

Goldsmith, Palais, Bigler, and Brown severally pleaded guilty. The jury returned a verdict of guilty as to Weinstein, Ernest Henry, alias Dutch Henry, Siegel, and Zetzel, and of not guilty as to Woodrow.

The government contended that the plaintiffs in error, together with others not indicted, viz. Burstein, Bortman, Udelson, and Kark, entered into an arrangement by which they were to control the business of manufacturing "moonshine" in the city of Chelsea; that those who were engaged in the business should pay $300 each; that there should be two places of manufacture conducted by the concern, and two more storage places; that all their materials for the manufacture of "moonshine" should be bought from the Suffolk Supply Company, conducted by Weinstein; that there should be a fixed price for the manufactured product, and that it should be sold to retailers through one agent, viz. Ernest Henry. This arrangement was made in December, and continued until about the middle of February.

The assignments of error upon the overruling of the demurrer cannot be sustained.

In Frohwerk v. United States, 39 S. Ct. 249, 249 U. S. 204, 63 L. Ed. 561, the Supreme Court said:

"Countenance, we believe, has been given by some courts to the notion that a single count in an indictment for conspiring to commit two offenses is bad for duplicity. This court has given it none. Buckeye Powder Co. v. Du Pont Powder Co. [39 S. Ct. 38] 248 U. S. 55, 60, 61 [63 L. Ed. 123]; Joplin Mercantile Co. v. United States [35 S. Ct. 291] 236 U. S. 531, 548 [59 L. Ed. 705]. The conspiracy is the crime, and that is one, however diverse its objects." See, also, Taylor v. United States (C. C. A.) 2 F. (2d) 444; Waldeck v. United States (C. C. A.) 2 F. (2d) 243; Dahl v. United States, 234 F. 618, 148 C. C. A. 384; Bailey v. United States (C. C. A.) 5 F. (2d) 437; Williams v. United States (C. C. A.) 3 F. (2d) 933; Norton v. United States (C. C. A.) 295 F. 136.

[2] The other ground set forth in the demurrer is that, as intoxicating liquor may be manufactured, possessed, sold, and transported legally, in accordance with a permit, the indictment does not negative the existence of such permit.

The indictment alleges that the intoxicating liquor was manufactured, possessed, sold, and transported unlawfully and it is not necessary that an exception be set out to be expressly negatived.

Section 32 of title 2 of the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½s), provides that "it shall not be necessary in any * * * indictment * * * to include any defensive negative averments." United States v. Scarneos (D. C.) 8 F. (2d) 320; Jelke v. United States, 255 F. 264, 166 C. C. A. 434; Sharp v. United States (C. C. A.) 280 F. 86; Goldberg v. United States (C. C. A.) 297 F. 98; Altshuler v. United States (C. C. A.) 3 F. (2d) 791.

[3] It is also assigned as error that the District Court erred in permitting the United States attorney in his opening remarks to the jury to state that the members of the conspiracy were to get police protection for the illegal sale of liquor through one "Dutch" Henry, there being no evidence afterwards admitted in the case to that effect, and that "Weinstein was the president and treasurer, and sometimes acted as one and sometimes acted as both, of this association."

The court stated to the jury that what the district attorney stated in his opening was not evidence, but told for the purpose of enabling the jury "to place in the story the evidence as it comes from the witnesses on the stand."

There was no evidence that Henry was to obtain police protection, and none that Weinstein was president or treasurer. There was evidence that Weinstein received some of the cash paid in by members of the organization.

After this statement by the court to the jury, we think they could not have been misled by any opening remarks of the district attorney.

[4] In order to sustain an indictment under section 37 of the Criminal Code (Comp. St. § 10201) for conspiracy to commit an offense against the United States, it is not only necessary to prove that such a conspiracy was entered into, but also that some overt act was performed in furtherance of it; but it is sufficient if one of the overt acts set out in the indictment, or in the bill of particulars, is proven. The government relied, to prove, not only conspiracy, but overt acts in furtherance of the same, upon the testimony of Kark, Bortman, Palais, and Bigler, who, from their testimony, the jury were warranted in finding were co-conspirators with the defendants. The character of this testimony was fairly commented upon by the presiding judge and its weakness pointed out.

Kark and Bortman were not indicted. Kark testified that some time in the month of November or December, 1924, a certain association was formed of men who were engaged in the wholesale liquor business and men who were engaged in the manufacture of liquor in Chelsea. He also testified as to meetings of the association. Bortman testified that he was engaged in the liquor business and "belonged to this corporation that was formed to manufacture liquor for the city." He also testified that Kark told him how "Dutch" Henry came to him with a proposition of manufacturing liquor to be disposed of in Chelsea, and that this was "moonshine." It is not quite clear from the record whether this statement of Kark to Bortman was made in the presence of the other defendants; but both Kark and Bortman were connected by the testimony of the government as co-conspirators, and declarations made by them in furtherance of the conspiracy, or explanation of the proposed acts, were clearly admissible.

Bortman also testified that Weinstein, at some meeting of the conspirators, said each one would have to pay $300, and Kark had said that $300 apiece should be raised to buy out two "moonshine" joints that were run-

ning, one owned by Kark and one by Bigler and Zetzel, and that all the members gave $300 apiece.

Witness Bortman further testified, in answer to the question: "What did the other members do, if they did anything?" Answer: "The other members—it was said between us—that they would have to do some kind of work; and they agreed that Jake Kark, Sam Zetzel, and Barney Burstein should ride out once in a while to the manufacturing joints; that is, 'moonshine' places, to see whether things were going right there."

Bigler testified as to a conversation between him and Zetzel, no others being present. He testified that Zetzel told him what Jake Kark had said to him, and that Kark asked him to join the corporation, but he declined to do so; that Zetzel had told him he was turning over his place to the corporation, as Kark had told him to do.

Kark and Zetzel were sufficiently connected up with the conspiracy to be co-conspirators, and their statements were admissible. Bigler himself had been indicted as a co-conspirator and pleaded guilty.

Palais, one of the codefendants, pleaded guilty and testified for the government to conversations with Kark and Burstein, and that the corporation sold the "moonshine" manufactured through "Dutch" Henry. He learned this from Kark and Burstein, and also from Weinstein, and was told this in Weinstein's office. He also testified, upon cross-examination, as to sales to different parties, but that he himself saw none of the liquors delivered, and, upon exception, the court stated to the jury that they should disregard all of his testimony that went beyond his own observation, and beyond what he was told "by other people in the gang."

Counsel for the defendant Weinstein at that time stated: "I believe that your honor has cured any danger of anything, but I want to save my rights anyway."

[5] There was evidence that sugar, yeast, and cans were supplied by Weinstein, and Bortman testified that he had bought sugar of Weinstein, and that during the period between December and the middle of February he carted sugar away from Weinstein's place of business, and discussed with him the purpose for which the sugar was being used. This was when the operation was first started, and Weinstein said that all sugar would have to be bought from the corporation, and that it was to be used to manufacture "moonshine."

There are many errors assigned to the testimony to which we have referred, but we think it was competent as coming from co-conspirators.

[6] It is also assigned as error that the district attorney, with reference to some phase of the case which the record does not disclose, stated: "George did it this time—George Weinstein." Although the court regarded this as a piece of pleasantry, he allowed an exception to it. Counsel for Weinstein contends that this was equivalent to an assertion by the district attorney that Weinstein was guilty; but, as there was no statement in the record as to the testimony or the situation to which this applied, we are unable to judge whether it was reversible error or not.

[7, 8] It is also assigned as error that the presiding judge failed to instruct the jury, at the request of the defendants, that there was no evidence "that the intoxicating liquor complained of contained one-half of one per cent. or more of alcohol by volume and was fit for beverage purposes, as defined in section 1, title 2, of the National Prohibition Act, and, the government having failed to establish this essential allegation beyond a reasonable doubt, the defendants must be acquitted."

The gist of the crime with which the defendants were charged was a conspiracy to commit certain offenses against the United States, denounced in certain sections of the National Prohibition Act. It was not necessary to prove that the conspiracy was successful, or that any law was violated. Williamson v. United States, 28 S. Ct. 163, 207 U. S. 425, 52 L. Ed. 278; United States v. Holte, 35 S. Ct. 271, 236 U. S. 140, 144, 59 L. Ed. 504, L. R. A. 1915D, 281; United States v. Rabinowich, 35 S. Ct. 682, 238 U. S. 78, 59 L. Ed. 1211; Manning v. United States (C. C. A.) 275 F. 29, 32; Shaffman v. United States (C. C. A.) 289 F. 370, 373.

It was necessary, however, in order to sustain a conviction, for the jury to find that some one of the overt acts alleged in the indictment had been committed. There was evidence that, in furtherance of the objects of the conspiracy, "moonshine" was manufactured, transported, and sold, and that two "moonshine joints" were purchased and operated. While there was no evidence as to the alcoholic content of this "moonshine," we cannot say as a matter of law that the jury were not authorized to find as a matter of common knowledge that, when witnesses testified that "moonshine" was manufactured, transported, and sold, they meant by the term "moonshine" whisky, just as the word

"Scotch" is often used to describe "Scotch" whisky.

Webster's New International Dictionary, 1924 edition, defines "moonshine" as an adjective, as "designating or pertaining to illicit liquor, as moonshine whisky."

It has been held that the manufacture and sale of whisky is forbidden by the act, without proof of its alcoholic content or that it is fit for beverage purposes. Williams et al. v. United States, 3 F. (2d) 933 (C. C. A. Sixth Circuit). See, also, Singer v. United States (C. C. A.) 278 F. 415, 418; Hensberg v. United States (C. C. A.) 288 F. 370, 371.

It was also held by District Judge McGee in United States v. Golden (D. C.) 1 F. (2d) 543, that "moonshine" whisky is included in the word "whisky" as used in the National Prohibition Act, title 2, § 1 (Comp. St. Ann. Supp. 1923, § 10138½), and he held "that whisky, and particularly moonshine whisky, is intoxicating, and, in a legal sense, is fit for beverage purposes, is a matter of common knowledge, of which judicial notice will be taken, and need not be alleged or proven."

Even if otherwise doubtful, the case, as now presented, falls both within the letter and the spirit of the statute of 1919. 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

The judgment of the District Court is affirmed in the case of each of the plaintiffs in error.

BINGHAM, Circuit Judge (dissenting). I am of the opinion that under section 1, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½) read in connection with other provisions of the act, the manufacture, sale, possession or transportation of "alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine," were made illegal because it was believed that such liquors contained more than one-half of 1 per cent. of alcohol by volume, were fit for beverage purposes, and were intoxicating, and that a jury might take judicial notice that this class of liquors contained more than one-half of 1 per cent. of alcohol by volume and were fit for beverage purposes.

But in section 1, "in addition" to these specified liquors, there is another class spoken of as "any spiritous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes," and I think that, where the evidence fails to show that the liquor in question is of the class specifically designated by name, it is incumbent upon the government to prove that the liquor was of the second class by showing that it contained one-half of 1 per cent. or more of alcohol by volume and was fit for beverage purposes.

Moonshine is not one of the class of liquors specifically designated and is plainly not within that class. And to be within the second class of "spiritous, vinous, malt or fermented liquor, liquids and compounds," etc., it should appear that it contains one-half of 1 per cent. or more of alcohol by volume and is fit for beverage purposes. State v. York, 65 A. 685, 74 N. H. 125, 127, 13 Ann. Cas. 116. The evidence fails to show this, and the judgment should be vacated.