### TEXAS LIQUOR CONTROL BOARD v. CONTINENTAL DISTILLING SALES CO.

#### No. 13777.

Court of Civil Appeals of Texas. Dallas.

Jan. 10, 1947.

Rehearing Denied Feb. 28, 1947.

Grover Sellers, Atty. Gen., Douglas E. Bergman, Asst. Atty. Gen., Richard H. Cocke, Sp. Asst. Atty. Gen., and Dean Gauldin, Dist. Atty., and Pat · Edwards, Asst. Dist. Atty., both of Dallas, for appellant.

John N. Touchstone and O. O. Touchstone, both of Dallas, for appellee.

BOND, Chief Justice.

The primary issue involved in this appeal is the construction of sec. 15½A(4) of Art. 666, Penal Code, reading:

"It shall be unlawful for any person holding a Non-resident Seller's Permit, or for any officer, director, agent or employee thereof, or for any affiliate, whether corporate or by management, direction or control to: (a) Hold or have an interest in the permit, business, assets or corporate stock of any person authorized to import liquor into this state for the purpose of resale; provided that such restrictions shall not be applicable to any such interest acquired on or before January 1, 1941."

This is a provision of a very comprehensive statute, Art. 666, Penal Code, Texas Liquor Control Act as amended in 1943, 48th Legislature, page 509, ch. 325, sec. 14, regulating traffic in alcohol liquors in this State, in which is provided:

"Art. 666—2. This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

The amendment, supra, was enacted to adequately deal with many phases of liquor control where existed some conditions, as here, requiring immediate correction in the public interest. Prior thereto, there was no statute dealing with the situation which the amendment sought to correct. The Texas Liquor Control Board or administrator is the agency created by the statute, charged with the administration of the regulation and enforcement of the Liquor Con-

trol Act; and, in the exercise of these functions and duties relating thereto, the Board or administrator is required (sec. 11) to "refuse to issue a permit to any applicant either with or without a hearing if it has reasonable grounds to believe and finds any of the following to be true: (1) * * * (2) That the applicant has violated or caused to be violated any provision of this Act or any rule or regulation of the Board during the twelve-month period preceding the date of his application. * * * (10) It is hereby declared that the provisions of this Section are required to be applied only to applicants who are newly engaging in the liquor business or whose permits or licenses have been cancelled under any authority contained in this Act. As to those applicants seeking renewal of permits, the Board or administrator shall be vested with discretionary authority to refuse or grant such permits under the restrictions of this Section."

On June 27, 1946, the Texas Liquor Control Board issued to appellee Continental Distilling Sales Company a "wholesaler's permit" and "storage permit" under the provisions of Art. 666, sec. 15(6) (15), Penal Code, to "(a) purchase and import liquor from distillers, brewers, wineries, wine bottlers, rectifiers, manufacturers, and their agents and purchase from other wholesalers within the State; (b) sell liquor in original containers in which received in this State to retailers and wholesalers authorized to sell same; (c) sell liquor out of State to qualified persons; * * *"; and (15) to store such liquors in this State, other than in dry areas. At the same time, the Board or administrator issued a "nonresident seller's permit," under the provisions of Art. 666—15½A, supra, to Continental Distilling Corporation, not a party to this suit, authorizing it to "(a) Solicit or take orders for liquor from only the holders of permits authorized to import liquor into this state; (b) ship, or cause to be shipped, liquor into Texas * * *." The "wholesaler's permit" and "storage permit" to appellee, and the "nonresident seller's permit" to Continental Distilling Corporation, were issued on the applications of the same personnel as the managerial heads of each of the corpo-

rations, on the relation that the stock of both corporations was wholly owned by the Publiker Industries, Inc., a third corporation, and that the three corporations are affiliates, each managed, directed or controlled, hold and have an interest in the permits, business, assets or corporate stock of each. The wholesaler's and storage permits and the nonresident seller's permit were issued perforce of two opinions by the Attorney General of Texas, holding in effect that appellee and the Continental Distilling Corporation were each eligible to enter into the liquor business in Texas, one (appellee Continental Distilling Sales Company) a wholesale liquor dealer, and the other (Continental Distilling Corporation) as a nonresident seller; and that the inhibition in Art. 666, sec. 15½A(4), supra, restricting affiliates from entering into such unity liquor business, had no application to appellee and its affiliate, Continental Distilling Corporation, under the excepted provision of the Act, in that their affiliates existed on or before January 1, 1941.

Subsequently, on August 21, 1946, the Attorney General handed down a third opinion recalling the two previous opinions and holding, in effect, that the "nonresident seller's permit" held by the Continental Distilling Corporation and the wholesaler-storage permit held by appellee were unlawfully issued, prohibited by the terms of the amendment, supra; hence appellee should not have been permitted to operate or engage in the liquor business in Texas under its permits while its affiliate Continental Distilling Corporation was operating under an auxiliary "nonresident seller's permit."

On August 28, 1946, on appellee's application for a renewal of its permits, the administrator of the Texas Liquor Control Board, after due notice and hearing, fortified with the authority of the Attorney General, last pronounced, and the statutes, supra, entered an order denying appellee's application for renewal of its "wholesaler-storage permit" to further engage in the liquor business in Texas, reciting in the judgment or order findings that the Continental Distilling Corporation was the holder of a nonresident seller's permit effective on the 1st day of September, 1946; has an

interest in the corporate stock of the applicant, in that the stock in said Continental Distilling Corporation and the applicant company (the Continental Distilling Sales Company) are wholly owned by the Publiker Industries, Inc., thus affiliated in management and control of the business with the nonresident seller's permit holder, Continental Distilling Corporation.

This suit was filed in a district court of Dallas County to set aside the order of the administrator on the ground, in brief, that the order was void, illegal, capricious and arbitrary, in that, such action of the Board or Administrator was based upon an erroneous construction of the Texas Liquor Control Act and the amendment thereto, supra; to direct by writ of mandamus the issuance of the wholesaler-storage permits; and, by order of the court, that appellee be allowed, pending trial, to operate its business upon such terms as the court may fix.

On August 31, 1946, appellee's petition was presented to the Honorable Jno. A. Rawlins, judge of said court, and, in chambers, the judge entered an order ex parte suspending the action of the administrator, pending trial, and expressly permitted appellee to carry on its operation under the permits which were cancelled by the administrator, as though renewals had been duly executed. The trial was set for September 9, 1946. Subsequently, on trial, judgment was entered by the Honorable Otis T. Dunagan, District Judge of the 7th Judicial District of Texas, sitting for the Judge of the 116th District Court, in which the suit was pending, vacating the order of the Texas Liquor Control Board or its administrator refusing renewal of appellee's permit which had expired on August 31, 1946; and commanding the Board or administrator to execute renewals as of September 1, 1946, for the period extending through August 31, 1947. To the aforesaid judgment and orders, the Board appealed.

Before passing on the primary issue involved in this appeal, we give consideration first to the mandatory injunction commanding the Board to issue appellee renewal permits, and the order allowing appellee to pursue its operations under the permits theretofore cancelled as of September 1, 1946 and extending through August 31, 1947. We think the injunction and order permitting appellee to pursue its business without a permit was erroneous.

Art. 1735, Vernon's Ann.Civ.St., provides:

"The Supreme Court only shall have power, authority or jurisdiction to issue the writ of mandamus or injunction or any other mandatory or compulsory writ of process against any of the officers of the executive departments of the government of this state and also the Board of County and District Road Indebtedness to order or compel the performance of any act or duty which, by the laws of this state, they, or either of them, are authorized to perform, whether such act or duty be judicial, ministerial or discretionary."

In a sense, a State officer is one whose jurisdiction, duties and functions are coextensive with the State, and who receives his authority under the State laws and performs some of the governmental functions of the State. The Texas Constitution divides the powers of the State Government into three departments: Legislative, Executive and Judicial. Vernon's Ann.St.Const. art. 2, § 1. An "executive officer" is one whose duties are merely to cause the laws to be executed and obeyed, hence "officers of the executive department of the government of the State" are officers whose duties are to execute the laws of the State coextensive with the State.

Indeed, the Governor is the chief executive of the State; Constitution, Art. 4, sec. 1. The Commissioner of the General Land Office is an officer of the executive department; De Poyster v. Baker, 89 Tex. 155, 34 S.W. 106; as the State Comptroller of Public Accounts; Bledsoe v. International R. Co., 40 Tex. 537; the Superintendent of Public Instruction; Willis v. Owen, 43 Tex. 41, 54. And it has been said that the State Banking Board is an executive State department, State Banking Board v. Winters State Bank, Tex.Civ.App., 13 S.W.2d 391; as is the Railroad Commission, Railroad Commission v. Gladewater Refining Co. Pipe Line, Tex.Civ.App., 179 S.W.2d 320. In Chalk v. Darden, 47 Tex. 438, it is held that district courts have no power by man-

damus over the State Comptroller in the discharge of the duties imposed upon him as one of the heads of departments. In Galveston, B. & C. Narrow Gauge R. Co. v. Gross, 47 S.W. 428, it was also held that the district court by mandamus could not control the action of the Commissioner of the General Land Office in the issuance of railroad certificates. In Kinney v. Channel State Bank, Tex.Civ.App., 288 S.W. 590, error refused, the State Banking Commissioner, in the administration of the affairs of an insolvent bank, could not be controlled by the district court by mandamus, except as to matters which the statute requires him to submit to the district court or judge.

■■ There has been no case cited, and we have been unable to find any authority, where a district court has attempted to issue a mandatory order or to control the action of the Texas Liquor Control Board or its administrator in the discharge of the duties imposed by law on the Board or administrator. However, the Board is undoubtedly an "executive department" of the State, and the administrator an "executive officer" of the State. The laws of Texas impose on the Board and administrator to carry the liquor laws of the State into effect and to administer the laws the same as other governmental departments administer laws pertaining to their offices. However, the Constitution, Art. 4, sec. 1, declares:

"The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General."

These were the only "executive officers" of the State Department at the time of the adoption of the Constitution, but by no means are they the only ones now. Be that as it may, it has been held in effect that the provisions of Art. 1735 apply only to the executive officers named in the Constitution. Petterson v. State, Tex.Cr.App., 58 S.W. 100; Herring v. Houston National Exchange Bank, 113 Tex. 264, 253 S.W. 813; Kidder v. Hall, 113 Tex. 49, 251 S.W. 497; McFall v. State Board of Education, 101 Tex. 572, 110 S.W. 739; Betts v. Johnson, 96 Tex. 360, 73 S.W. 4; Pickle v. McCall, 86 Tex. 212, 24 S.W.265; Herring v. Houston National Exchange Bank, Tex. Civ.App., 241 S.W. 534; Brand, Banking Commissioner, v. San Patricio County, Tex. Civ.App., 80 S.W.2d 460, writ refused. So we must hold that the district court had jurisdiction to issue a writ of mandamus on hearing against the Texas Liquor Control Board and its administrator. However, we are of the opinion that the ex parte order made in chambers, and the judgment awarding the mandatory injunction, thus permitting appellee to engage in and pursue its liquor business during pendency of the suit, were erroneous. Hence we set the same aside, thus nullifying the effect of the order on any action that may theretofore or thereafter have been exercised by appellee perforce thereof.

On the primary issue involved, we think the trial court erred in rendering judgment setting aside the order of the administrator refusing to issue to appellee its permits, since the pleadings and evidence showed conclusively that appellee is prohibited under Art. 666, sec. 15½A(4), P.C., from holding a wholesale-storage permit while its affiliate Continental Distilling Corporation holds a nonresident sales permit.

The pleadings and evidence disclose that Continental Distilling Sales Company and Continental Distilling Corporation were both incorporated in 1933 under the laws of the State of Delaware, and that the Publiker Industries, Inc., another foreign corporation, holds all the stock of the three corporations; that the managerial heads of the corporations are the same personnel and that they manage, control and are interested in the business affairs of each of the corporations. This relationship existed prior to January 1, 1941. From 1934 to 1946, appellee had been licensed to transact business in this State under permit as a nonresident corporation; and since 1943 held a "nonresident seller's permit" issued under the Texas Liquor Control Act (Art. 666, sec. 15½A, P.C.). Contrariwise, the Continental Distilling Corporation had never been licensed to transact business in this State and had never held a permit under the Texas Liquor Control Act prior to

June 1946. On June 27, 1946, the same personnel composing the managerial heads of the corporations, made application to the Board for the permits—Appellee for wholesaler's and storage permits, and the Continental Distilling Corporation for nonresident seller's permit. The permits were granted on the strength of the applications and the Attorney General's opinions first pronounced. These permits, under the Liquor Control Act, supra, expired on August 31, 1946, and prior to the expiration date the Continental Distilling Corporation made application for and was issued a nonresident sales permit to begin September 1, 1946 and expire August 31, 1947. Subsequently, appellee Continental Distilling Sales Company made its application for a wholesale-storage permit. At the time this last application was made, the Board and the administrator were advised by the Attorney General of Texas that the two affiliates could not in unity engage in the liquor business in Texas; hence appellee's application was refused.

The Legislature, in enacting the Texas Liquor Law (Art. 666 P.C.), expressly determined that the liquor traffic in this State would be best controlled by keeping the various levels of the liquor industry independent of each other, and to that end provided (sec. 2) that "All of its provisions shall be liberally construed for the accomplishment of that purpose." This conclusion is reached by a consideration of the entire tenor of the Act: Sec. 17 makes it (1) "unlawful for any person holding a package store permit, or owning an interest in a package store, to have any interest, either directly or indirectly, in a Wine and Beer Retailer's Permit, or Beer Retailer's License, or the business thereof. (2) * * * for any person to hold or have an interest in more than five (5) package stores or the business thereof. It shall further be unlawful for any person to hold or have an interest in more than five (5) package store permits. (3) * * * for any person who owns or has an interest in the business of a distiller, brewer, rectifier, wholesaler, winery, or wine bottler * * * (a) to own or have an interest, directly or indirectly, in the business, premises, equipment, or fixtures of any retailer; (b) to furnish, give, or lend any money, service, or other things of value, or to extend unusual credit terms to any retailer, or to any person, for the use, benefit, or relief of such retailer, or to guarantee the fulfillment of any financial obligation of any retailer; (c) to make or enter or offer to enter into an agreement, condition, or system, the effect of which will amount to the shipment and delivery of alcoholic beverages on consignment; (d) to furnish, give, rent, lend, or sell any equipment, fixtures, or supplies to any retailer; * * *." Prior to 1943, there was no law regulating those who sold to wholesalers. The Liquor Control Board, under the authority granted it by the statute, promulgated, in 1938, rules which provided that no wholesaler would be granted a permit until it was shown that the person making the application had no financial interest, directly or indirectly, by or through any agent or affiliate, private or corporate, in the manufacturing or distillation of distilled spirits and that no distillery or manufacturer of distilled spirits owned, controlled, or had any financial interest, directly or indirectly, either by or through any agent or affiliate, private or corporate, in the business of said person making application for a wholesaler's permit. In 1939 a similar provision was passed by the Board.

In 1943 the Legislature passed the amendment under review, thus regulating distillers and others who sold to wholesalers. A "wholesaler" is a person authorized to import liquor into this State for the purpose of sale (Art. 666, sec. 15(6); and a nonresident seller is one authorized to sell his products only to wholesalers. So in giving effect to the amendment, a nonresident seller may not have an interest in the permit, business, assets or corporate stock of a wholesaler; and no officer, director, agent or employee of a "nonresident seller" may have an interest in such business of the wholesaler; and no affiliate, whether corporate, or by management, direction or control of a nonresident seller, may have an interest in the permit, business, assets or corporate stock of a wholesaler. So we have here appellee, Continental Distilling Corporation and Publiker Industries, Inc., one entity or corporate

family, attached to each other and in unity engaged in the liquor business in which the distilling branch of the entity, under its nonresident permit, sells its products to the wholesaling branch under its wholesaler's permit. Such unity brings about a direct violation of the section in question, unless the proviso of the statute "that such restrictions shall not be applicable to any such interest acquired on or before January 1, 1941," is applicable to the situation here.

■ It may well be said that if the Continental Distilling Corporation was a liquor wholesaler on January 1, 1941, and the appellee was a distiller at that time, or either held a wholesaler's permit under the Liquor Control Act, the excepted provision would have application. It is obvious that the phrase "such interest" contained in the exception refers back and relates to the type of interest prohibited by the forepart of the statute, i. e., to an interest in a wholesaler. The literal wording of the statute provides, in effect, that a nonresident seller, or its affiliate, may not hold an interest in a wholesaler unless it held such interest in the wholesaler on or before January 1, 1941. The appellee, nor either of its affiliated corporations, Continental Distilling Corporation and Publiker Industries, Inc., were "wholesalers" holding permits under the Texas Liquor Control Act, supra, until June 27, 1946, when appellee alone procured a wholesaler's permit. It is quite plain, we think, that because the status of wholesaler was not acquired by either of the affiliated corporations until after January 1, 1941, a wholesaler's permit cannot be held by appellee while its affiliate, another member of the corporate family, holds a nonresident seller's permit. The statute in question prohibits the present formation of a nonresident seller-wholesaler relationship between these corporations. The Continental Distilling Corporation having been granted a nonresident seller's permit effective September 1, 1946 and to expire August 31, 1947, the Board or administrator was within the statute in refusing appellee a wholesaler's storage permit effective to run during the same period of time as the nonresident seller's permit issued to its affiliate corporation.

The judgment of the court below is reversed and, in accordance herewith, judgment here rendered for appellant.

Reversed and rendered.

LOONEY and YOUNG, JJ., concurring.