DENNIS J. CONTA, Secretary Department of Revenue
Last year the Exchange Club of Madison, a nonprofit association, brought suit against one of your employes because of his interference in a wine-tasting event held by the Exchange Club in 1976 for the sole benefit of the Wisconsin Mental Health Association and the Madison Scouts Drum and Bugle Corps. It was alleged that the wine-tasting event was held in a licensed liquor establishment where there were licensed bartenders on the premises and all regulations relating to the dispensing of wine were observed. Solicitations for the benefit of the charities involved were made but admission was not refused to those who did not donate. The wine was supplied free of charge by licensed wholesalers and was dispensed under the license of the establishment where the event was held.
In the action in the Circuit Court of Dane County, the Exchange Club sought a declaratory judgment that the holding of the event for the benefit of charities did not violate the laws controlling the sale of wine. Judge P. Charles Jones concluded that he could not properly grant a declaratory judgment because all of the parties who would be affected by a declaratory ruling were not before the court. In the final paragraph of his memorandum decision, Judge Jones requested that the Attorney General render a formal opinion in the matter. I feel, therefore, that it is incumbent upon me to state to you and your Department my official opinion in regard to the questions presented in the lawsuit brought by the Exchange Club so that you and the members of your staff can be guided accordingly in future similar matters which may arise.
Section 176.04(1), Stats., prohibits the unlicensed sale of intoxicating liquors, or the gift of such liquors, if made with intent to evade any law of the state. It is my opinion that under the facts as stated in the complaint of the Exchange Club, this statute would not be violated since a Class B licensee would be responsible for his own premises and for the dispensing of the wine Since such licensee is fully authorized under sec. 176.05(2). Stats., to "sell, deal and traffic" in intoxicating liquors, it makes no difference whether the wine is sold or given away. *Page 278 
Nor does sec. 176.17(2), Stats., make the above-described event illegal. This statutory provision, known as the "tied house" law, contains various restrictions, in substance prohibiting manufacturers, rectifiers and wholesalers of intoxicating liquors from furnishing, giving or lending anything of value directly or indirectly, to "any person engaged in selling products of the industry for consumption on the premises where sold, or to any person for the use, benefit, or relief of said person engaged in selling as above."
A brief examination of the legislative history of "tied house" laws reveals that such statutes were "designed to prevent or limit the control of retail liquor dealers by manufacturers, wholesalers, and importers." 45 Am. Jur. 2d, Intoxicating Liquors
sec. 123. The Wisconsin Supreme Court has never dealt with the question presented here, but the court in Neel v. Texas LiquorControl Board, 259 S.W.2d 312, 316-317 (Tex.Civ.App. 1953), included in its opinion a particularly clear explanation of the purpose of "tied house" legislation:
 "We need not dwell upon the evils of the `tied house.' It is obvious that one result of such control could be the creation of a monopoly for certain brands of liquors as well as dictating prices. The importance of preventing such control is reflected by a report of the United States Department of Commerce in 1941 titled State Liquor Legislation wherein on page 20 it is stated:
 "`The liquor control legislation enacted in the several states since the repeal of the Eighteenth Amendment to the Federal Constitution has uniformly attempted to prevent a recurrence of the evils that were prevalent before prohibition when the large liquor interests controlled, through vertical and horizontal integration, the productive and distributive channels of the industry.'
 "That our own State is in accord with this legislative policy see: Texas Liquor Control Board v. Continental Distilling Sales Co., Tex. Civ. App., 199 S.W.2d 1009, 1014 . . . where the Court in referring to various provisions of our regulatory statutes concluded that:
 "`The Legislature, in enacting the Texas Liquor Law . . . expressly determined that the liquor traffic in this State would *Page 279 
be best controlled by keeping the various levels of the liquor industry independent of each other . . . .'"
It is thus apparent that "tied house" laws were enacted for a very definite and narrow purpose, and that the Legislature certainly did not intend to restrict the gift of liquors from wholesalers to licensees where neither receives any financial benefit from the transfer and where the gift in no way operates to give the wholesaler any sort of control over the licensee. It is well established that statutes enacted as a legitimate exercise of the police power ought not to be given a construction which is "unnecessary to the furtherance of the main purpose of the statute." Enos v. Hanff, 98 Neb. 245, 152 N.W. 397, 400
(1915). I am of the opinion that a reasonable construction of sec. 176.17(2), Stats., is that gifts from liquor manufacturers, rectifiers or wholesalers to liquor licensees are prohibited only where some benefit results to one of the parties to the transfer which could be interpreted as constituting a tie-in in violation of the "tied house" law. This is not so where all benefits go to a third-party charity.
One last possibly relevant statute is sec 176.37(1), Stats. This section provides in part that:
 "The giving away of intoxicating liquors or other shift or device to evade the provisions of any law of this state relating to the sale of such liquors shall be deemed and held to be an unlawful selling . . . ."
Before a violation of this provision can be established it must be shown that the conduct complained of, that is, the giving away of intoxicating liquors, is for the purpose of evading a law of the state. Here, it is uncontested that the retailer is licensed and need not attempt to evade any provisions of law relating to the disbursement of intoxicating liquors. And the wholesaler is not attempting to evade the "tied house" law because that statute is simply not applicable to this situation.
Neither the spirit nor the letter of the state's liquor regulation statutes is violated by events such as that conducted by the Exchange Club. The wholesaler has simply not given anything of value to the retail licensee; the wine is not for its keeping
BCL:WHW *Page 280