

# The Attorney General of Texas

January 9, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Raul L. Longoria
Special Senate Committee on Gasohol
P. O. Box 12068
Austin, Texas 78711

Opinion No. MW-125

Re: Issuance of industrial alcohol manufacturer's permits and distiller's permits.

Dear Senator Longoria:

You have asked several questions relative to the local industrial alcohol manufacturer's permit ("Gasohol" Permit) and the distiller's permit. The provisions in Chapter 47 ("Gasohol" Permit) and Chapter 14 (Distiller's Permit) of the Alcoholic Beverage Code, V.T.C.S., can only be interpreted in light of a specific fact situation.

We are informed that an out-of-state corporation proposes to acquire and own 100% of certain Texas realty and improvements located thereon, including a high performance still capable of producing alcohol equivalent to the degree of 190 proof or above that level; and the out-of-state corporation proposes to grant a leasehold interest in such realty and improvements to a Texas corporation, which could in turn apply, qualify for, and receive both a "Gasohol" Permit and simultaneously for the same premises, a Distiller's Permit. The out-of-state corporation would incidentally own a minimum of 49% of the authorized and issued shares of the stock of the Texas corporation. The Texas corporation would then enter into a proposed management contract with the out-of-state corporation authorizing the latter to conduct, operate, and control the realty and related improvements thereby distilling alcohol under authority of the "Gasohol" Permit, and transferring the same product to the authority of the Distiller's Permit for transport from the Texas premises to the premises of a corporate affiliate of the out-of-state corporation for the purposes of producing alcoholic beverages to be made available for wholesale throughout the United States of America. Furthermore, the corporate affiliate of the out-of-state corporation is itself an out-of-state corporation and the holder of a nonresident seller's permit in Texas. (Chapter 37, Texas Alcoholic Beverage Code). This corporate affiliate does not actually manufacture alcohol.

The first two questions relate only to Chapter 47 (Gasohol Permit) of the Alcoholic Beverage Code. The first question assumes that a company holds a gasohol permit and asks "can an out of state corporation own property and lease to a Texas entity?"

The new provisions in Chapter 47 contain no requirement or qualification with regard to property ownership.   Thus, there is no prohibition against an out-of-state company's obtaining a gasohol permit.   There is no general provision in the Code which requires that a permittee own the property which will constitute the licensed premises under the permit.

Your second question is:

> How can it be determined if alcohol, which has not been denatured, is unfit for human consumption?

We note initially that it has been suggested that alcohol of an extremely high proof can be considered to be unfit for human consumption.   Federal courts have had an opportunity to consider this contention.   In Alksne v. United States, 39 F.2d 62 (1st Cir. 1930), the court noted that:

> Alcohol scientifically may be classified as a poison, but that does not interfere with its being an intoxicating liquor.   It is the basic element of all intoxicants.   Indeed it is its poisonous effects which renders it intoxicating, as that word itself implies.   It is common knowledge, and the act so declares, that alcohol, whisky, rum, etc., are intoxicating.   To be intoxicating, however, they must be used as a beverage.   The act itself, therefore, assumes that these liquors are fit for beverage purposes; and the courts have frequently held that it is not necessary to allege or prove that alcohol, whisky, gin, etc., are either intoxicating or fit for beverage purposes.   Strada v. United States (C.C.A.) 281 F. 143; Hensberg v. United States (C.C.A.) 288 F. 370; Weinstein v. United States (C.C.A.) 11 F.(2d) 505, 509; United States v. McGuire (D.C.) 300 F. 98, 100.   That only the most hardened toper would use 95 per cent proof alcohol without dilution, or that in terms of science it is classified as a poison, does not render it unfit for beverage purposes within the meaning of the Prohibition Act.

> . . . [I]t is the common understanding, and was the intent of Congress so to declare, that alcohol, whisky, rum, etc., are all intoxicating liquors, and therefore are to be considered fit for beverage purposes within the meaning of the act, unless rendered unfit by the addition of some other ingredient for that purpose.   If it should be held that pure alcohol of high proof is not an intoxicating liquor by reason of its being unfit for beverage purposes without dilution, the fraternity known as 'bootleggers' can hereafter ply their trade with impunity.

Id. at 69.   Thus, high alcoholic content alone does not render the beverage unfit for human consumption.   Even if it is assumed high proof alcohol could not be consumed, the simple expedient of dilution would make it fit for human consumption.   Moreover, the Texas

Alcoholic Beverage Commission, under authority granted in section 5.38 of the Code to regulate labeling, has expressly approved labels of 190 proof alcohol commonly sold in package stores.

The Texas Alcoholic Beverage Code does not contain any specification for denaturing alcohol, and there is no rule or regulation controlling the denaturing process. We believe it is within the reasonable discretion of the Commission to establish standards for denaturing alcohol. They would not necessarily be limited to the federal formula for denaturing alcohol, see 27 C.F.R., sections 212.10, et seq. It is clear, however that the legislature apparently determined that mixture of alcohol with gasoline would make it unfit for human consumption. See Alcoholic Beverage Code, ch. 47.

The second series of four questions is addressed to facts concerning a local industrial alcohol manufacturer's permit and a distiller's permit, collectively. The first of those questions asks whether an enterprise, holding both the local industrial alcohol manufacturer's permit and the distiller's permit, can be operated if the plant and facilities are owned and built by an out-of-state company.

Under the set of facts outlined above, the question must be answered in the negative. A corporate affiliate of the out-of-state corporation is the holder of a nonresident seller's permit. The nonresident seller's permit puts its holder at a different level of the industry than the holder of a manufacturer's permit. Accordingly, the anti-tied house provisions of chapter 102 of the Code would prohibit a corporation and its affiliate from holding a distiller's and nonresident seller's permit respectively. See Texas Liquor Control Board v. Continental Distilling Sales Co., 199 S.W.2d 1009 (Tex. Civ. App. — Dallas 1947), appeal dismissed, 68 S. Ct. 26 (1947). In light of the fact situation it is unnecessary to determine if the tied house prohibitions would apply to a company holding only a local industrial alcohol manufacturer's permit.

The next question asks whether the facilities can be leased to an operating company by an out-of-state company.

. In light of our answer to the preceding question, this inquiry would not be relevant to a corporation fitting the factual situation outlined at the beginning of the opinion, since the tied house prohibition would prevent its holding a distiller's permit. If a corporation, which has no direct or indirect interest in any level of the alcoholic beverage industry, owned a plant and facilities in this state, the property could be leased to an operating company which held both a local industrial alcohol manufacturer's permit and a distiller's permit.

Of course, questions of leases to operating companies are subject to examination on a case by case basis in making a factual determination that no subterfuge of ownership exists as prohibited in section 109.53 of the Code, which provides:

> ... It is the intent of the legislature to prevent subterfuge ownership of or unlawful use of a permit or the premises covered by such a permit; and all provisions of this code shall be liberally

construed to carry out this intent, and it shall be the duty of the commission or the administrator to provide strict adherence to the general policy of preventing subterfuge ownership and related practices . . . .   Any device, scheme or plan which surrenders control of the employees, premises or business of the permittee to persons other than the permittee shall be unlawful. . . .

Your next question is:

If the operating company complies with existing regulations pertaining to ownership, etc., could both the above mentioned permits be granted to the operating company?

We know of no statutory prohibition against a single qualified entity holding both permits.

Your final question asks whether the operating company can be owned "partially (in minority interest, i.e., 49%) by an out of state company?"

A permit may be issued to a corporation so long as at least 51 per cent of the stock is "owned at all times by citizens who have resided within the state for a period of three years and who possess the qualifications required of other applicants for permits. . . ." Alcoholic Beverage Code, § 109.53.  Of course, the facts of any specific situation would have to be examined to insure that there is no violation of the tied house or subterfuge ownership prohibitions.  See Alcoholic Beverage Code, §§ 102.01 et seq., 109.53.

### SUMMARY

There are no residency requirements for a holder of a local industrial alcohol manufacturer's permit (gasohol).  A corporation may not hold a distiller's permit if it has an affiliate which holds a nonresident seller's permit.  As much as 49 percent of a corporate permit holder may be owned by a person residing out-of-state but the facts of any specific situation must be examined to insure that there is no question of subterfuge ownership or violation of tied house prohibitions.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Reed Lockhoof
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Bob Gammage
Susan Garrison
Rick Gilpin
Reed Lockhoof